THOMAS MURRAY, EXr., *vs.* STATE MUTUAL LIFE INSURANCE COMPANY.

PROVIDENCE—MARCH 25, 1901.

PRESENT : Stiness, C. J., Tillinghast and Rogers, JJ.

(1) *Life Insurance. Incontestable Clause. Public Policy.*

The insurer is bound by a provision in the policy that "this policy shall be incontestable after two years from the date of its issue, provided the premiums are paid as agreed," and is precluded from setting up a defence based upon false and fraudulent answers made by the insured in his application.

What the effect of the suicide of the insured would be upon such a policy *quære.*

ASSUMPSIT upon a policy of life insurance. The facts appear in the opinion. Heard on demurrer to pleas, and demurrer sustained.

TILLINGHAST, J. This action is brought to recover the amounts claimed to be due on two life insurance policies, issued on the same date. The plaintiff sets up in his declaration that the policies were, by their terms, incontestable after two years from the date of their issue, and that more than two years had elapsed between the date of their issue and the death of the insured. The defendant has filed several pleas in bar, to the effect that certain false and fraudulent answers were made by the insured in the applications. The plaintiff has demurred to these pleas, and the case is before us on that demurrer.

The "incontestable" clause in each of the policies reads as follows : "This policy shall be incontestable after two years from the date of its issue, provided the premiums are paid as agreed."

(1) The only question raised by the demurrer is whether the defendant can be permitted to set up the defence which it has interposed. Counsel for defendant insists that it can, on the broad and familiar ground that fraud vitiates all contracts ; and that courts will always refuse to lend their aid in enforc-

ing contracts tainted with fraud, no matter what the agreements or stipulations of the parties may be. As to the correctness of the general proposition of law that fraud vitiates all contracts there can be no doubt. "But while fraud is obnoxious and should be held to vitiate all contracts tainted thereby, courts should exercise care that fraud and imposition should not be successful in annulling a contract which provides, in effect, that if cause be not found and charged within a reasonable and specific time, establishing the invalidity thereof, it should thereafter be treated as valid." The stipulation in the contract sued on is that "This policy shall be incontestable after two years from the date of its issue, provided the premiums are paid as agreed." This is not an absolute stipulation to waive all defences and to condone fraud. "On the contrary," as said by the court in *Wright* v. *M. B. L. Assn.*, 118 N. Y. 237, "it recognizes fraud and all other defences, but it provides ample time and opportunity within which they may be, but beyond which they may not be, established." "It is in the nature of and serves a similar purpose as statutes of limitations and repose, the wisdom of which is apparent to all reasonable minds." That the parties to a contract may stipulate for a shorter period of limitation than that provided by law, as to all matters which might in the absence of such stipulation be set up in avoidance of the contract, would seem to be entirely reasonable ; and such is the well-settled rule of law. Such an agreement is neither expressly nor impliedly prohibited by our statutes of limitations and is consistent with the policy upon which statutes of limitations are founded. *Wilkinson* v. *Fire Ins. Co.*, 72 N. Y. 499.

The practical, and, evidently, the intended, effect of the stipulation in question was to create a short statute of limitations in favor of the insured, within which limited period the insurer must, if ever, test the validity of the policy.

It has repeatedly been held that an agreement limiting the time within which an action may be brought upon a policy of insurance is not against public policy, and may be enforced though less than the usual time imposed by law has been

fixed.   2 May on Ins. 4 ed. § 478, and cases cited in note. 11 Am. & Eng. Ency. of Law, 349–50.   And, as said by the court in *Clement* v. *Ins. Co.*, 101 Tenn. 28, "If this be so, it is difficult to see why a similar limitation upon the right of the insurer to contest should be against public policy, and why it should not be enforced by the courts."   That the company holds out the special provision in question as an inducement to people to insure, and also that it is very effectual in accomplishing that object, no one can for a moment doubt. It clearly gives everyone to understand that no matter what mistakes may be made in the answers to the numerous questions propounded in the application, which answers are declared therein to be warranties, no advantage can be taken thereof by the company after the expiration of the time limited in the agreement; that his rights under the policy and the rights of those in whose favor it is drawn will then become absolute; and that the beneficiary, after the death of the insured, and perhaps long after the death of all those who knew the facts relating to the transaction, will not be forced into a law-suit to determine whether the policy ever had any legal force or validity.   The insertion of said clause in the policy of the company is virtually saying to the insured : "We will take two years in which to ascertain whether your representations are false or not, and whether you have been guilty of any fraud in obtaining the policy; and if within that period we cannot detect any such falsity or fraud, we will obligate ourselves to make no further inquiry, and to make no defence on account of them."   To hold the company bound by such an undertaking is not to violate any rule of public policy, but is simply to compel it to fulfill its plain and deliberately assumed obligation.   In *Mass. Life Ins. Co.* v. *Robinson*, 104 Ga. 256, the law is very satisfactorily stated in the following language : "Where parties enter into a contract which from its nature affords an opportunity to one party to perpetrate a fraud upon another, and it is stipulated therein that the party who is liable to be defrauded shall have a specified time in which to make inquiry as to the acts and conduct of the other party, he is on notice by the very terms

of the contract itself that fraud may be involved in it, and the duty is upon him to commence at once an investigation into the acts, conduct, and representations of the other party ; and if the time fixed is such that the information which would show that the fraud had been perpetrated could have been, by the exercise of ordinary diligence, obtained, then the parties are bound by their contract as to time, and, after the lapse of that time, fraud is no longer a defence. This does not violate in any way the well-settled principle that fraud is to be abhorred, vitiates everything it touches, and the person guilty of it is not to be countenanced in any way by the courts. While all this is true, it is equally well settled that a contract which has for its foundation a willful fraud may become vitalized and enforceable by the negligence of the party who was the victim of the fraud."

An examination of the reported cases bearing upon the question at issue, from that of *Wood* v. *Dwarris*, 11 Exch. 493, decided in 1856, which appears to be the earliest one, down to the present time shows that there is a practical unanimity of opinion in the courts in support of the position taken by the plaintiff in this case, and as the law as declared in said cases meets with our entire approval, there is no occasion for a further discussion of the question involved. See *Wright* v. *Mut. Ben. Assn.*, 43 Hun. 61; *Patterson* v. *Mut. Life Ins. Co.*, 100 Wis. 118; *Clement* v. *Ins. Co.*, 101 Tenn. 22 ; *Mareck* v. *Mut. R. F. Life Assn.*, 62 Minn. 39. .

The cases of *Holland* v. *Chosen Friends*, 54 N. J. L. 490, and *Ritter* v. *Mut. Life Ins. Co.*, 169 U. S. 139, relied on by defendant's counsel, were decided on facts so materially different from those which are presented in the case before us that they do not have much bearing thereon. In the former case the court found that the agreement under which it was claimed that the defendant was precluded from setting up the defence of fraud was not sufficiently clear and unambiguous to warrant the finding contended for by plaintiff, and hence the court was not called upon to decide as to the effect of such a clause as is presented in the case at bar, which is plain and unambiguous and clearly means and was un-

doubtedly intended to mean that no defence whatever should be interposed by the company after two years, the premiums being paid according to contract during that time. In the latter case the court held that the suicide of the insured, while in his sound mind, avoided the policy notwithstanding the stipulation therein that "after two years from the date of the policy the only conditions that should be binding on the holder of the policy were that 'he shall pay the premiums at the time and place and in the manner stipulated in the policy, and that the requirements of the company as to age and military or naval service in time of war shall be observed;' that in all other respects, if the policy matured after the expiration of two years, the payment of the sum insured should not be disputed; and that the party whose life was insured should always wear a suitable truss." The court said : "These provisions of the contract tend to show that the death referred to in the policy was a death occurring in the ordinary course of the life of the assured, and not by his own violent act designed to bring about that event."

What the effect of the suicide of the insured would be on a policy like those here involved we are not called upon to decide.

Demurrer sustained, and case remanded for trial on the merits.

*Hugh J. Carroll and Irving Champlin,* for plaintiff.
*Edward D. Bassett,* for defendant.