## NEW YORK LIFE INS. CO. v. KAUFMAN et al.*

## KAUFMAN et al. v. NEW YORK LIFE INS. CO.

### No. 7455.

Circuit Court of Appeals, Ninth Circuit.

May 13, 1935.

Rehearing Denied June 24, 1935.

*Writ of certiorari denied 56 S. Ct. 149, 80 L. Ed. —.

Alfred J. Smallberg and Robert Kaufman, both of Los Angeles, Cal., for appellant.

Meserve, Mumper, Hughes & Robertson, of Los Angeles, Cal. (E. Avery Crary, of Los Angeles, Cal., of counsel), for appellee.

Arthur Rosenblum and Clore Warne, both of Los Angeles, Cal., amici curiæ.

Before WILBUR and DENMAN, Circuit Judges, and LOUDERBACK, District Judge.

DENMAN, Circuit Judge.

The bill of complaint in this case was brought by the New York Life Insurance Company, a New York corporation, against Louis Y. Kaufman and Anna Kaufman, each alleged to be citizens of California. Two causes of relief are stated. One sought the cancellation of the disability insurance in three policies which insured, in separable agreements, against both the disability of and the death of Louis Kaufman. Kaufman is the beneficiary of the disability insurance and Anna Kaufman of the life insurance. Concerning the latter, no relief is sought. Each policy is but part of the insurance agreement between the parties; the "entire contract" consisting of "the policy and the application therefor." There was a single instrument for each contract, a copy of the application following the policy.

The cancellation was sought on the ground of Louis Kaufman's fraudulent concealment, made in his application, concerning his prior health and medical history. Answers in his application concealed a prior infection of tuberculosis from which he became totally and permanently disabled after the insurance comtracts were made. The policies, identical in pertinent drafting, contain a two-year incontestable clause, in effect at the filing of the bill more than three years after they were issued.

The second cause of action, also based on the fraud, was for $900 disability benefits paid Kaufman, less $114.51, a tendered return of premiums.

The Kaufmans appeared generally in a motion to dismiss the bill. The pertinent grounds are those enumerated below, except that in (3). The motion was denied. The answer set up the following defenses: (1) The bill joined as defendant Anna Kaufman, shown by affidavit accompanying the notice of motion, to be a resident of the state of Massachusetts; (2) the bill failed to allege damages exceeding $3,000; (3) the court in equity had no jurisdiction because the insurance company had a "plain, speedy and adequate" remedy at law; (4) the incontestability clause period having passed, its provisions prevented any contest based on the warranties or representations of the application portion of the insurance contract.

The Kaufmans' answer, so far as pertinent, failed to deny the fraud and the receipt of the $900 disability benefits, alleged waiver and laches, and the four separate defenses set forth above. They filed a cross-complaint for $1,751 disability insurance due and the return of certain premiums, discussed later. The insurance

company's answer to the cross-complaint tendered issue to its allegations, but did not set up the defense of fraud.

Hearing was had, and the court found the existence of the fraud, the permanent total disability of the insured after the making of the contracts, an absence of laches and waiver, and the jurisdictional amount. It concluded the incontestability clause was not applicable to the disability portion of the contracts, ordered a decree for the insurance company on its bill and that defendants take nothing by their cross-complaint. The decree canceled and rescinded the disability insurance and awarded the insurance company $900 less the set-off of $114.51. Defendants appealed, and the pertinent errors assigned concern the four grounds of attack on the bill enumerated above.

The decree adjudicates nothing concerning the cross-complaint and does not mention it, though the order for the decree is that the Kaufmans take nothing by it. The question suggests itself whether an appeal from a decree deciding only the issues raised by the bill and answer brings up an interlocutory order affecting the issues raised by the cross-complaint and its answer. However, it is unnecessary to decide this question, since the principles upon which we hold the decree should be reversed with reference to the issues of the bill may guide the court as to its disposition of its unperformed order on the cross-complaint.

■ (1) *Anna Kaufman's Joinder as Defendant Not a Ground of Dismissal.*— There was no prior special appearance by Anna Kaufman seeking dismissal as to her. In bills claiming jurisdiction because of diverse citizenship, it is not a ground of dismissal of the bill as a whole that one of the defendants is not a citizen of the state in which it is filed. Sweeney v. Carter Oil Co., 199 U. S. 252, 257, 26 S. Ct. 55, 50 L. Ed. 178; St. Louis & S. F. R. Co. v. McBride, 141 U. S. 127, 11 S. Ct. 982, 35 L. Ed. 659.

It would have availed her nothing if the motion had been to dismiss as to her alone; it being a part of her general appearance asking dismissal on the other grounds set forth above. St. Louis & S. F. R. Co. v. McBride, supra.

(2) *The Bill Alleged the Jurisdictional Amount.*—This question is important here, for, if answered in the negative, the court has no jurisdiction to consider the merits of either the bill or the cross-complaint; the latter claiming less than $3,000.

The disability insurance provided for the payment of $25 each on two policies and $50 on the third, an aggregate of $100 a month. The bill alleges insured's disability and the payment to him of nine monthly benefits aggregating $900. Some time after the last payment, it alleges the discovery of a fraudulent representation in the application for the insurance relative to the prior medical and sickness history of the insured, whereupon the company gave its notice of rescission. The aggregate of further payments, had they been made, to the date of the filing of the bill, was $1,200. If the fraud constituted a defense to the disability insurance, the company would also collect from the insured a further sum of $502 in premiums on the life portion of the policies, the obligation for which the policies suspended during the disability period. The total is $2,702, specifically alleged to be involved in the litigation at the time the bill was filed.

■ It is obvious that, unless the totally disabled consumptive must be presumed to have a three months' life expectancy, this portion of the bill fails to allege the jurisdictional amount. We know of no such presumption of vitality in a totally disabled consumptive, and hence, if no more appeared in the bill, Kaufman's motion to dismiss for want of the jurisdictional amount would have to be sustained. In suits in federal courts based on diversity of citizenship, the presumptions are against its limited jurisdiction. Bors v. Preston, 111 U. S. 252, 255, 4 S. Ct. 407, 28 L. Ed. 419.

■ The situation is different where a bill properly alleging the jurisdictional amount is subsequently attacked under Judicial Code § 37 (28 USCA § 80), where it must be shown affirmatively that the amount is less than the requirement. Wetmore v. Rymer, 169 U. S. 115, 18 S. Ct. 293, 42 L. Ed. 682; Smithers v. Smith, 204 U. S. 632, 27 S. Ct. 297, 51 L. Ed. 656. On the hearing on issue joined under section 37, the burden would be on Kaufman to show that his illness was so acute that his survival for three months after the filing of the bill was highly improbable. Absence of all evidence on this issue would make it proper for the court to find against Kaufman. It would be necessary only to decide that he had not sustained his burden of proof.

However, the bill is not confined to the allegations of the amounts of disability installments and premiums matured at the time of its filing, but further states that "the value of the object sought by the bill of complaint exceeds $3,000," and issue was joined on this allegation.

The object sought here is the extinction of contracts with the insured, which contracts are the property of both the plaintiff and defendant. Second Nat. Bank v. M. Samuel & Sons (C. C. A.) 12 F.(2d) 963, 53 A. L. R. 49; Central Metal Products Corp. v. O'Brien (D. C.) 278 F. 827; J. C. McFarland Co. v. O'Brien (D. C.) 6 F.(2d) 1016. This is a proper method of allegation of jurisdictional amount in connection with physical property. Smith v. Adams, 130 U. S. 167, 9 S. Ct. 566, 32 L. Ed. 895; Woodside v. Ciceroni (C. C. A.) 93 F. 1; Marion Mortgage Co. v. Edmunds (C. C. A.) 64 F.(2d) 248; South Dakota Cent. R. Co. v. Chicago, M. & St. Paul R. Co. (C. C. A.) 141 F. 578. We can see no reason for holding otherwise with reference to the deprivation of or extinction of a contract. Mutual Life Ins. Co. v. Thompson (D. C.) 27 F.(2d) 753; Hunt v. New York Cotton Exchange, 205 U. S. 322, 27 S. Ct. 529, 51 L. Ed. 821.

█ The fact that Kaufman was alive and litigating at the hearing, a year after the filing of the bill, warranted the inference that he had three months' vitality at filing and sustained the court's finding of the jurisdictional amount.

█ The jurisdiction as to amount confers jurisdiction of the cross-complaint, in which Kaufman claims damage for less than $3,000. Since the insurance company's bill is within the jurisdiction as to amount, the District Court retains jurisdiction to try and dispose of the claim of the cross-complaint, even after a dismissal of the bill. The court retains this jurisdiction for a law cause of less than the $3,000, though the dismissed cause is brought on the equity side. Kirby v. American Soda Fountain Co., 194 U. S. 141, 24 S. Ct. 619, 48 L. Ed. 911.

(3) *Court in Equity Can Consider Questions of Other Issues on Merits Submitted by Parties, Even if Complainant's Rights Have Plain, Adequate, and Complete Remedies at Law.*—Kaufman contends that whatever rights the company's bill asserts have plain, adequate, and complete remedies at law, and hence the bill must be dismissed for want of jurisdiction.

Unlike the case of Mutual Life Ins. Co. v. Markowitz (C. C. A.) 78 F.(2d) 396, argued with this case and to-day decided, the common-law cause of the bill here is for but $900, and, since not transferable to the law side, the court has no occasion to determine whether transfer is refusable because the bill shows no cause of action at all. However, Kaufman's other major contention, namely, that the incontestability clause defeats any contest either in equity or at law, was argued and urged for decision in equity both by him and the insurance company.

█ The ground of the relief sought, fraud in procuring the contract, and the remedy of rescission and cancellation, are matters of historical equitable cognizance. The existence of a legal defense concerns the merits and not the jurisdiction. Hence the submission by both parties of a disputed issue on the merits other than that of remedy at law to protect the right claimed invokes power in equity to decide it. Mutual Life Ins. Co. v. Markowitz, supra. Since the bill is to be dismissed because the defense of fraud is prevented by the incontestability clause, it is unnecessary to decide how plain, adequate, or complete was the claimed remedy at law.

█ (4) *The Incontestability Clause Prevents the Contest for the Fraudulent Breach of Provisions of the Application for the Policy.*—The insurance contract between the parties here is described in the policy in the following language: "The Contract.—The Policy and the application therefor, copy of which is attached hereto, constitute the entire contract."

The application is dated January 12, 1929; the policy January 21, 1929. The contest here is as to a breach of the following provision of the application: "On behalf of myself and of every person who shall have or claim any interest in any insurance made hereunder, I declare that I have carefully read each and all of the above answers, that they are each written as made by me, and that each of them is full, complete and true, and agree that the Company believing them to be true shall rely and act upon them."

The face of the policy first describes a life insurance and then an insurance against disability, as follows: "And upon receipt of due proof that the Insured is totally and presumably permanently disabled before age 60, as defined under 'Total and Permanent Disability,' the compa-

ny agrees to pay to the insured . * * * Twenty-five * * * Dollars each month, and to waive payment of premiums, as provided therein."

Following the face of the policy, on the next page, appears in smaller print a marginally blocked off group of provisions and conditions relating to the disability insurance.

The insurance company properly construes the policy portion of the entire contract to contain two completely separable insurance agreements—one against death and the other against total disability. It contends that the disability insurance as an entirety is made contestable for a fraudulent breach of provisions in the application by the italicized phrase in the following clause in the policy: "Incontestability. —This Policy shall be incontestable after two years from its date of issue except for non-payment of premium and *except as to provisions and conditions relating to Disability Benefits.*"

These two separate and entire insurances constitute the "Policy." Both were first placed in the incontestability clause by the use of the words "This Policy shall be incontestable," and then, the company urges, the separate insurance against disability, *as an entirety,* is taken out of incontestability and restored to contest, by the phrase "except as to provisions and conditions relating to Disability Benefits."

On the argument, the company described the incontestability clause as a "selling point" with the company's solicitors. This we accept as a fact, for the clause, after its period elapses, protects the insured's dependents against a contest for fraud claimed after his death, in which, if alive, he would be the principal witness. It also may protect the insured from such charge after his disability has weakened his memory and resistance and destroyed his power to earn his expenses of litigation. The courts have declared the clause available to the honest seeking its beneficence, despite the fact that it makes indefensible such grossly reprehensible fraud as Kaufman admits. Wright v. Mutual Benefit Life Ass'n, 118 N. Y. 237, 23 N. E. 186, 187, 6 L. R. A. 731, 16 Am. St. Rep. 749; Murray v. State Mutual Life Ins. Co., 22 R. I. 524, 48 A. 800, 801, 53 L. R. A. 742; Mutual Life Ins. Co. v. Hurni Packing Co., 263 U. S. 167, 177, 44 S. Ct. 90, 68 L. Ed. 235, 31 A. L. R. 102.

On the company's solicitors pointing out this "selling" clause to the ordinary man, he certainly would be mystified that such "put in and take out" drafting of two completely independent insurances was necessary for the simple statement: "The *life* insurance of this policy is incontestable after two years, except for non-payment of premiums."

His natural inference would be that the disability insurance would not be mentioned in the incontestability clause unless something about disability was to be freed of contest.

Counsel strongly urged, in explanation of such drafting, that the court take judicial notice of a business rivalry between groups of life and accident companies in New York, in the process of which the incontestability clause was redrafted to its present form in aid of its warring solicitors. While the court has judicial knowledge of the New York statutes, it can know nothing, outside the record, of the company's business history . as causing such draftsmanship even if it were relevant to its interpretation. Much less can such knowledge be imputed to the ordinary man solicited to take the insurance.

Further consideration discloses that the involved phrase "except as to provisions and conditions relating to Disability Benefits" is also entirely unnecessary. If the claimed interpretation of the company is to be accepted, the draftsman could have accomplished his purpose and excepted the disability insurance as an entirety by the use of the simple phrase "except as to the disability insurance." Such unnecessary involution of drafting, however confusing to the insured, if successful, may accomplish its purpose. It nevertheless suggests the second question, why the specific detail of provisions and conditions "relating to" the disability insurance, if the contestability of this insurance *as a whole* is intended.

Commenting on similar unnecessary phraseology requiring interpretive exploration, the opinion in the case of Ness v. Mutual Life Ins. Co. of New York (C. C. A.) 70 F.(2d) 59, at page 61, says: "It is to be noted that the exception is, not as to the double indemnity and disability benefits, but as to 'restrictions and provisions applying to the double indemnity and disability benefits,'" and: "If it had been the intention of the company that the right to contest liability for double indemnity or

disability benefits should not be affected by the incontestability clause, it would have been easy enough to use language making that intention clear, as by simply wording the second exception to the incontestability clause to read: 'Except as to liability for double indemnity or disability benefits.' If there were any ambiguity in the language used, it is well settled that it should be resolved in favor of the insured. Mutual Life Ins. Co. v. Hurni Packing Co., 263 U. S. 167, 174, 44 S. Ct. 90, 68 L. Ed. 235, 31 A. L. R. 102."

Kaufman claims that by the particular mention in the plural of provisions and conditions "relating to" the disability insurance is meant something other than that insurance as a whole, and that a contest for fraud to void the whole of the insurance against disability is not thus excepted. His contention finds support from an examination of the company's policy, attached to and made a part of the bill. It shows a separate body of "provisions and conditions relating to disability benefits," printed in smaller type than the face of the policies and blocked in by heavily printed margins. Under the title "Total and Permanent Disability," this marginally inclosed group occupies an entire page of the six pages succeeding the face of the policies. None of the other provisions is so marginally set off. This group and other provisions on the succeeding pages are referred to on the face of the policies and incorporated there by reference as "the benefits and provisions * * * are a part of this contract as if they were recited at length over the signatures hereto affixed."

Construing the policies, as we must in case of doubt, against the insurance company drafting them, we must assume that, if the apparently purposefully inclosed group of provisions and conditions relating to disability insurance were incorporated in the face of the policies, they would have the same inclosed printing with its smaller type. Whatever significance it has in its inclosed and different appearance when off the face of the policy it would have when printed there.

These provisions and conditions are similar to those in the Ness Case, and we agree with Judge Parker's opinion there that they include "provisions" deemed by the company as contestable and for which the excepting phrase would preserve the contest. Furthermore, as to the word "conditions," it is difficult to conceive that the fraudulent breach of an agreement in the application was contemplated as the ground of contest of one or another of the many "conditions relating to disability benefits." One does not draw a provision to contest such conditions in a contract by a fraud defeating the whole instrument. It is more rational to suppose that the contestability which the excepting phrase saves is as to the satisfaction of the conditioning requirements, even if prior decisions of the courts had held such precaution unnecessary.

It thus appears ambiguous whether the unnecessarily plural particularizing exception as to provisions and conditions relating to the disability benefits refers to the blocked off group of provisions and conditions or to the insurance as a whole. This ambiguity must be resolved against the company and the contests reserved by the excepting phrase held to be confined to this enclosed group.

 When we consider the agreement of the parties as an entire contract, made up of the application of one date and the policy of another, there is an equally strong reason for holding that the incontestability clause prevents a contest based upon a fraudulent breach of the provisions and agreement of the application set forth at the beginning of this section of the opinion.

The "entire contract" is described in the policy as follows: "The Contract.— The Policy and the application therefor, copy of which is attached hereto, constitute the entire contract. All statements made by the Insured shall, in the absence of fraud, be deemed representations and not warranties, and no statement shall avoid the Policy or be used in defense to a claim under it, unless it is contained in the written application and a copy of the application is indorsed upon or attached to this Policy when issued."

The paragraph last quoted is not a provision creating the right to contest for fraudulent or other breach of the agreement in the application. It merely limits the right to contest already existing in the breached agreement of the application.

The incontestability clause reads: "This Policy shall be incontestable * * * except as to provisions and conditions relating to Disability Benefits." The ordinary man reading the clause would believe the provisions referred to were those included in the word "Policy" at the beginning of

the clause, and not to the provisions in the application, which is not mentioned.

Had all the provisions possibly giving rise to contest been intended to be excepted into contestability, the clause would have read: "This *entire contract* shall be incontestable * * * except as to provisions and conditions relating to Disability Benefits." It would then have been clear that the provision agreeing as to the truthfulness of the statements and the reliance of the company thereon might have been excepted into contest. If so written, however, there still would be the ambiguity as to whether the exception of provisions and conditions "relating to" the disability insurance should be construed as referring to the blocked off group of provisions which had this relationship.

This was not done, and in the form pleaded there is a second ambiguity, the resolving of which against the company leaves the policy incontestable for fraud in the application provisions.

In Thompson v. New York Life Ins. Co. (D. C.) 9 F. Supp. 248, and Kiriakides v. Equitable Life Assur. Soc., 174 S. C. 140, 177 S. E. 40, the incontestability provisions are substantially the same as in the instant case. Pursuing the same analysis of the ambiguity as to whether the exception has reference to the disability insurance as a whole or only to those grouped provisions relating to it, under a subhead entitled "Disability Benefits" in the Thompson Case, and "Benefits in Event of Total and Permanent Disability" in the Kiriakides Case, these courts resolve the ambiguity in favor of the insured. The reasoning is that suggested in the Ness Case.

In two cases the disability insurance is embodied in a supplemental agreement, as a "complete and effective contract" to which the exceptions to incontestability applied. Penn. Mutual Life Ins. Co. v. Hartle, 165 Md. 120, 166 A. 614, 91 A. L. R. 1466, and Guardian Life Ins. Co. v. Katz, 243 App. Div. 11, 275 N. Y. S. 743. They throw no light on the construction of the Kaufman policies.

In none of the other cases relied on by the insurance company does there appear to have been considered any separated blocked off grouping of contestable provisions and conditions relating to the disability insurance, and all are distinguishable on that ground. But one considers a policy describing the contract in the words "the policy and the application * * *

constitute the entire contract." That is a Mississippi case, New York Life Ins. Co. v. Gresham, 170 Miss. 211, 154 So. 547, involving the same incontestability clause as here. In that case there is no consideration of the unnecessary involutions of phraseology or the suggested implications of ambiguity therefrom, noted first in the Ness Case.

In New York Life Ins. Co. v. Davis (D. C.) 5 F. Supp. 316, there was the same incontestability clause, but the instrument in question contained no language dividing the whole contract into two sets of provisions, one those of the policy and the other those of the application. In that case the application is "made a part of the said *policy*." No analysis such as we have made of the Kaufman contracts is considered in the opinion. In Greber v. Equitable Life Assur. Soc. (Ariz.) 28 P.(2d) 817, the incontestability clause is the same, but the blocked off contestable provisions do not appear nor does the significant division of the whole contract into policy and application. In Kaffanges v. New York Life Ins. Co. (C. C. A. 1st) 59 F.(2d) 475, Chambers v. New York Life Ins. Co., 148 Misc. 561, 265 N. Y. S. 217, Steinberg v. New York Life Ins. Co., 263 N. Y. 45, 188 N. E. 152, 90 A. L. R. 542, Connecticut General Life Ins. Co. v. Brandstein, 243 App. Div. 723, 249 N. Y. S. 1018, and Connecticut Mutual Life Ins. Co. v. Hirsch, 240 App. Div. 816, 266 N. Y. S. 950, neither the incontestability clause, the arrangement of contestable disability provisions in a significant blocked off group, nor the double division of the whole contract appear.

Because of this insufficiency of the bill, shown in the terms of the insurance contract pleaded, it is ordered dismissed and the lower court advised to consider further the issues of the cross-complaint and its answer.

Decree reversed.

Supplement to Opinion in Denying Petition for Rehearing.

The insurance company's petition for rehearing urges that the court's second construing of the incontestability clause, with reference to the application portion of the contract, fails to distinguish between the subject-matter of the contests arising under the provisions of disability insurance and the grounds of those contests. It contends that the provisions and condi-

tions of the incontestability clause are all "subjects" of contest, and hence the only "ground" of contest is the fraud in the application. The suggestion would be pertinent if well founded. An analysis of the petition's argument shows that it otherwise supports the contentions of the insured, and he is entitled to have it stated in this supplement to the opinion.

In its petition the insurance company now agrees with appellant's contention that the insured layman would interpret the words of the incontestable clause in the policy "except as to the provisions and conditions relating to disability benefits" as an "express exception" into contestability of each of the several provisions and conditions "which appears *in* the *policy*," for the purpose of making certain that the company could maintain contests "as to" them. This interpretation of the company is stated in the petition as follows: "We, therefore, respectfully urge that so far as the subject of contest is concerned, *every condition and provision* which appears *in the policy of insurance*, whether on page 1 or 2 thereof, is *expressly* excepted from the effect of the incontestable clause, and any and all of such conditions and provisions may be contested on any *grounds* affecting their validity subsequent to the expiration of the two-year period referred to in the incontestable clause. * * *"

The company's own construction precludes the contention that the provisions and conditions were not those of the *policy* because certain courts had held some of the policy conditions and provisions would continue to exist even if the policy as a whole had been made incontestable. The essential consideration here is that it is not the policy (singular) as a whole which is made contestable. Contests are reserved only "as to" its (plural) provisions and conditions. What is said in Stean v. Occidental Life Ins. Co., 24 N. M. 346, 171 P. 786, cited in the petition, concerning a policy (singular) made incontestable as a whole, has no application to the clause in this case, which provides contests "as to" the policy's conditions and provisions.

Since these expressly exempted contests of the policy "as to" its conditions and provisions do not include fraud, the insured is not required to look outside his policy to a document executed at an earlier date for such a ground of contest. The clause cannot now be rewritten to read: "The entire agreement made up of policy and application is contestable as to every provision and condition." Ambiguity exists in the clause drafted by the company which must be resolved in the insured's favor.

The argument of the company's petition is that, although the purpose of the drafting of the "express exceptions" was to assure contests "as to" the many provisions and conditions, each of them is the "subject" as distinguished from the "ground" of contest. The argument continues that, since each is the "subject" of a contest, that contest may be grounded on the fraud in the application.

Concerning the "conditions" so expressly excepted into contestability, the petition makes no answer to that portion of our opinion in which we state: "Furthermore, as to the word 'conditions,' it is difficult to conceive that the fraudulent breach of an agreement in the application was contemplated as the *ground* of contest of one or another of the many 'conditions relating to disability benefits.' One does not draw a provision to contest such conditions in a contract, by a fraud defeating the whole instrument. It is more rational to suppose that the contestability which the excepting phrase saves is as to the satisfaction of the conditioning requirements, even if prior decisions of the courts had held such precaution unnecessary."

The clause reserves contests *"as to"* the conditions. The only subject of the contests as to the many conditions of the policy is the promise to pay the insurance money for the disability covered. The nonperformance of any one of the several conditions precedent to this payment is the *ground* of contest with reference to the payment. It certainly cannot be logically claimed that the contested performance of the condition is the "subject" of a contest based upon fraud in the application.

The illogical but necessary conclusion from the company's contention is that the *ground* for a contest of a claim for the payment of benefits, i. e., nonperformance of a condition precedent to payment, is also the *subject* of another contest in which the *ground* of contest may be fraud in the procurement of the policy. Surely insured laymen are not to be subject to such reasoning in construing a clause having the plain implications of that in this policy.

So also the "provisions" which are "expressly excepted" into contestability are admitted by the company to be the provisions

of the policy. For instance, the provisions that "Disability Benefits shall not apply if the disability of the Insured shall result from self-inflicted injury or from military or naval service in time of war." On a suit by the insured for the payment of the disability benefits, the company's contest "as to" a failure to come within these provisions regarding coverage would be the *ground* of contest. Fraud in procurement of the policy would be an entirely different ground.

It is true that there are decisions such as that of Judge Cardozo, in Metropolitan Life Ins. Co. v. Conway, 252 N. Y. 449, 169 N. E. 642, holding that such provisions are descriptive details of the coverage and that a contest as to whether the insured's claim came within their limits would survive after the two-year period had elapsed.

We need not assume, however, that it was an excess of caution which moved the company to include the contest of self-inflicted injuries or those from military or naval service in time of war as a part of the matters "expressly excepted" into contestability. Other courts have held similar provisions incontestable after the lapse of time bringing into effect the incontestability clause. Royal Circle v. Achterrath, 204 Ill. 549, 68 N. E. 492, 63 L. R. A. 452, 98 Am. St. Rep. 224; Sun Life Ins. Co. v. Taylor, 108 Ky. 408, 56 S. W. 668, 94 Am. St. Rep. 383; Loyal Americans of Republic v. Mayer, 137 Ill. App. 574. These cases hold that liability for injuries arising from such causes is incontestable after the elapse of the stated period. The Ness Case recognizes this divergence of opinion in the different courts as the reason for including such provisions as among those excepted into contestability.

In determining what contests the company had in mind in drafting the incontestability clause, we have their filing of copies of policies issued in many different states. In each the clause is the same. It is a standard form, and its purpose in making contestable after the two years these conditions and provisions of the policy is to meet the law of any state in which the incontestable clause would prevent a contest regarding them.

The petition suggests that the court has misunderstood the insurance company's position in assuming that the ground of their contest was the breach of a warranty in the application portion of the contract. The bill, after alleging the fraudulent misrep-resentations and the applicant's declarations that they were true, alleges further that he "*agreed* that complainant company *believing them* to be true should and could rely and act upon them." (Tr. 72.) The complaint continues, concerning this reliance: "That the complainant *relied upon and believed* each and all of the representations, declarations and statements * * *; that each and all the statements, representations and answers made to the medical examiner by defendant referred to herein, were *conditions precedent* to the issuance and delivery of the said policies of insurance and to the issuance of the disability provisions contained in said policies. That complainant relied solely thereon and not otherwise in *issuing* said contracts of insurance." (Tr. 78.)

The "entire contract" is described in the policy as: "The Contract.—The Policy and the application therefor, copy of which is attached hereto, constitute the entire contract. All statements made by the Insured shall, *in the absence of fraud,* be deemed representations and not warranties, and no statement shall avoid the Policy or be used in defense to a claim under it, unless it is contained in the written application and a copy of the application is indorsed upon or attached to this Policy when issued."

The company does not claim "absence of fraud," but pleads most reprehensible fraud. Only by virtue of a *contractual* obligation of the insured, such as a warranty against fraud in the application, could the presence of fraud in the representations cause the nonfulfillment of the "conditions precedent to the issuance and delivery of said policies of insurance," which are pleaded as relied upon by the company for the rescission sought in the bill. The result would be the same, however, whether the contest was on the ground of a breach of warranty regarding fraud contained in the application portion of the contract, or on the ground of a failure in a condition precedent to the issuance of the policy that fraud should be absent, or on the ground of fraudulent misrepresentations, regardless of whether there be a warranty or a condition.

The petition cites the recent decision of Paulson v. Montana Life Ins. Co. (Wash.) 43 P.(2d) 971. The clause there involved does not appear in the opinion nor is there shown under consideration any entire contract consisting of two separate instru-

ments of different dates. The opinion does not state that the company's interpretation of the clause was challenged by the insured, or, if challenged, that the company's interpretation, presented in the petition for rehearing here, was there offered. The only errors assigned and argued concerned the establishing of fraud.

Petition denied.