## DORMAN v. JOHN HANCOCK MUT. LIFE INS. CO. OF BOSTON, MASS., et al.

### No. 8201–Y.

District Court, S. D. California, Central Division.

Jan. 14, 1939.

George H. Moore, of Los Angeles, Cal., for plaintiff.

Meserve, Mumper & Hughes By E. Avery Crary, all of Los Angeles, Cal., for defendants.

YANKWICH, District Judge.

On February 2, 1931, John Hancock Mutual Life Insurance Company of Boston, Massachusetts, a corporation, to which we shall refer as "the insurer", executed and delivered at Kansas City, Missouri, to

Interstate Bakeries Corporation and its subsidiaries or affiliated companies a one-year renewable group insurance policy. Western Bakeries Corporation, Ltd. of Los Angeles, was a subsidiary and affiliated company of Interstate Bakeries Corporation. We shall refer to it as "the employer". By the group policy, the insurer agreed to pay, upon proof of death of any insured employee of the bakery company, the sum to which the designated employee was entitled, in accordance with a certain schedule. The amount of insurance on each life was made dependent upon the "annual earnings" of the employee, the highest amount being $10,000, for an employee whose annual earnings were $9001 and more.

The policy was issued under an application of Interstate Bakeries Corporation, dated December 2, 1930, in which it sought group insurance for employees, the names of which were to be furnished on separate forms, for all schedules between A and K,—K being the highest, calling for $10,000.

The policy recited that the Company would "issue to the employer for the delivery to each employee whose life is insured hereunder an individual certificate setting forth a statement as to the insurance protection to which he is entitled, to whom payable, and containing provision to the effect that in case of the termination of the employment for any reason whatsoever the Employee shall be entitled to have issued to him by the Company without further evidence of insurability and upon application made to the Company within thirty-one days after such termination and upon the payment of the premium applicable to the class of risk to which he belongs and to the form and the amount of the policy at his then attained age, a policy of life insurance in any one of the forms customarily issued by the Company, except term insurance, in an amount equal to the amount of the Employee's protection under this policy at the time of the termination of his employment."

On December 6, 1934, Dudley M. Dorman, whom we shall call "the insured", signed an application for insurance in the sum of $10,000. In it he designated Western Bakeries Corporation, Ltd., as his employer, himself as an employee, with his occupation as "department head", but leaving the space in the application calling for the designation of the "department"

blank. He named as beneficiary, Wilbur Alanson Dorman, his nephew, the plaintiff herein. The application authorized the deduction of $2.40 per week from his wages to apply towards the cost of the insurance. On the same day, he was handed by his employer a certificate, *executed by the insurer,* upon its printed form, in which the name of the employer was printed and in which the name of the insured, the amount of the policy and the name of the beneficiary were typewritten, inserted, evidently, by the employer.

On March 21, 1936, while both the group policy and the certificate were in full force and effect and the premiums under them had been fully paid, the insured died. Proof of death was made within the time allowed by the policy, but the insurer declined to make payment. This action was instituted by the beneficiary to recover the sum of $10,000 with interest at seven per cent from April 10, 1936.

The group policy contained an incontestability clause reading: "This policy shall be incontestable after one year from the date of issue except for non-payment of premiums." And the only question presented for decision is whether, in view of this clause, the defendant is relieved from payment, by the proof allowed by me, over the objection of the plaintiff, that, at the time the individual certificate was issued, and at the time of his death, the insured was only a director, receiving no compensation from the Company for any meetings which he attended, although his income from other sources exceeded $10,000.

At the outset, we must bear in mind that, under the law of California, incontestability clauses are contractual limitations akin to statutory limitations of actions and preclude "any defense after the stipulated period on account of false statements warranted to be true, even though such statements were fraudulently made, unless by the terms of the policy fraud is expressly or impliedly excepted from the effect of such provision." Dibble v. Reliance Life Insurance Company, 1915, 170 Cal. 199, 149 P. 171, 174, Ann.Cas.1917E, 34. And see, Mutual Life Insurance Company v. Margolis, 1936, 11 Cal.App.2d 382, 53 P.2d 1017; Coodley v. New York Life Insurance Company, 1937, 9 Cal.2d 269, 70 P.2d 602. This is also the rule in the Ninth Circuit. See

New York Life Insurance Company v. Kaufman, 9 Cir., 1935, 78 F.2d 398; Stroehmann v. Mutual Life Insurance Company, 1937, 300 U.S. 435, 57 S.Ct. 607, 81 L.Ed. 732. As the individual certificate of insurance issued to Dorman was delivered in California, it is possible to hold,—under the general rule which makes an insurance policy take effect, unless the contract specifies the contrary, at the place of delivery,—[Ostroff v. New York Life Insurance Company, D.C.Cal., 1938, 23 F. Supp. 724] that it was a California contract. Certain it is that, so far as Dorman was concerned, no right accrued to him until he signed, in California, the individual application and received his individual certificate there. While the premium is payable in Boston, the place of payment of benefits is not that city nor Kansas City. The group policy is silent on the subject.

Under the general rule which calls for performance at the place where the contract is made, when no other place is indicated (see California Civil Code, § 1646), the insurer's obligation to pay the benefits may be interpreted as calling for payment at the place of delivery,—California. This is also the rule as to payment. 48 C.J. 592, 593. We are bidden to resolve doubt in the language of an insurance policy in favor of the insured. New York Life Insurance Company v. Kaufman, 9 Cir., 1935, 78 F.2d 398; Stroehmann v. Mutual Life Insurance Company, 1937, 300 U.S. 435, 57 S. Ct. 607, 81 L.Ed. 732. So, if we resolve the doubt as to what law is applicable in favor of the insured and declare that the certificate,—because it was applied for and delivered in California and the benefits under it were payable there,—was a contract governed by the law of California [Erie Ry. Company v. Tompkins, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487; Ruhlin v. New York Life Insurance Company, 1938, 304 U.S. 202, 58 S.Ct. 860, 82 L.Ed. 1290]—the insurer is barred from questioning the status of the insured as an employee in order to avoid payment.

But we need not go to that length. For the circumstances in the case, and the wording of the contract of insurance we are considering compel the conclusion that the defense asserted here is, in reality, an attempt to avoid the effect of the incon-

testability clause after the lapse of time provided in the contract.

Assume that a director is not, strictly speaking, an employee. Yet his designation as such in the application and in the certificate, if false, is not, any more than any other false statement, made a ground of contest and cannot be inquired into in a suit on the policy, after the expiration of the one-year period of contestability. The falsity was in the employee's application. *This application is made a part of the contract of insurance.* The false designation of the employee was carried over into the certificate issued by the employer under the power given by the group policy. That certificate, in turn, is made "subject to the terms and conditions" of the group policy.

The insured was a director at the time the certificate was issued to him. He so remained up to the time of his death.

In the application, he designated himself as a department head, the department not being specified. *This was palpably false.* So, proof that he was not a department head or any other kind of employee engaged actively in the performance of work for the company, but a director only, is an attempt to avoid the effect of the incontestability clause by proving, *through extrinsic evidence,* the falsity of the statement in the application and the certificate, as to the nature of the employment of the insured.

An incontestability clause excludes all grounds of contest not mentioned in it. See Mutual Reserve Fund Life Ass'n v. Austin, 1 Cir., 1905, 142 F. 398, 6 L.R.A.,N.S., 1064; Equitable Life Assurance Society v. Deem, 4 Cir., 1937, 91 F. 2d 569; New York Life Insurance Company v. Kaufman, 9 Cir., 1935, 78 F.2d 398. In the case first cited, the Court said [page 401]:

"The term 'incontestable' is of great breadth. It is the 'policy' which is to be incontestable. *We think the language broad enough to cover all grounds for contest not specially excepted in that clause.* The word 'policy' may well be taken to mean a formal document delivered by the company, and containing evidence of an obligation to pay. Such a document so delivered is ordinarily contestable, with reference to questions arising in connection with its delivery and payment of the

first premium, as well as with reference to statements contained in the application.

"In Carpenter v. Providence Washington Insurance Co., 16 Pet. 495, 509, 510, 10 L.Ed. 1044, Mr. Justice Story said:

. "'It is not true that because a policy is procured by misrepresentation of material facts it is therefore to be treated, in the sense of the law, as utterly void ab initio. It is merely voidable, and may be avoided by the underwriters upon due proof of the facts; but until so avoided it must be treated for all practical purposes as a subsisting policy. In this very case the policy has never, to this very day, been avoided, or surrendered to the company. It is still held by the assured, and he may, if he pleases, bring an action thereon to-morrow; and, unless the underwriters should at the trial prove the misrepresentation, he will be entitled to recover. * * *

"'Indeed, we are not prepared to say that the court might not have gone farther, and have held that a policy—existing and in the hands of the insured, and not utterly void upon its very face, without any reference whatever to any extrinsic facts—should have been notified to the underwriters, even although by proofs, afforded by such extrinsic facts, it might be held in its very origin and concoction a nullity.'

"Upon the face of each policy in suit it was not invalid. Until contested by the company, it had such force as upon its face it purported to have. All of the requirements of the company upon the assured were met by the payment of premiums. The policy was outstanding as a certificate of membership. If a policy utterly void upon proof of extrinsic facts may be regarded as 'other insurance,' so this policy, until either avoided or proven null and void in its origin, may be regarded as a policy in continuous force.

"The argument that the policy was not in continuous force is predicated upon an extrinsic fact not appearing upon the face of the policy, to wit, the fact that the assured was not in good health at the date of delivery of the policy. In setting up, or even in relying upon, this extrinsic fact, the company *is contesting its policy as evidence of its obligation. If the company is at liberty to set up this fact after the lapse of more than 5 years, it is equally at liberty to set it up after the lapse of 40 years. Instead of being an incontestable policy, if we adopt the defendant's argument, the policy is always contestable.*" Mutual Reserve Fund Life Insurance Company v. Austin, supra, at pages 401, 402. Italics added.

To the same effect are: Great Southern Life Insurance Company v. Russ, 8 Cir., 1926, 14 F.2d 27; Hurt v. New York Life Insurance Company, 10 Cir., 1931, 51 F.2d 936; Service Life Insurance Company v. Weinberg, 7 Cir., 1936, 81 F.2d 359; Equitable Life Assurance Society v. Deem, 4 Cir., 1937, 91 F.2d 569; Stevens v. Woodmen of the World, 1937, 105 Mont. 121, 71 P.2d 898.

■ To our mind, this is a complete answer to the claim made here. In effect, the insurer asserts that, in denying that the insured was an employee, it is not attempting to avoid the terms of the policy or to prove fraud, but is merely attempting to prove that the deceased was not covered by the policy. But this is, in effect, *to say that the policy is not in existence as to him because he was not an employee.* It is indubitable, however, that he had a certificate duly issued to him, upon a proper application, extending to him the benefits of the policy. In both he was designated as an employee. The application, together with the application of the employer and the group policy, *were one contract.* New York Life Insurance Company v. Kaufman, 9 Cir., 1935, 78 F.2d 398. We can see no distinction between a claim such as here made that the policy was not in effect *because the possessor of a certificate was not,* in fact, *an employee at that time* and the claim rejected in the case just quoted from that a policy was not in effect because the insured therein *was not in good health at the time it was issued to him.* In both instances, the attempt is to defeat the policy by showing, through extrinsic evidence, not appearing on its face, that the insured was not what the policy claimed him to be. In the one case, a person in good health, in the other case, an employee.

To us the conclusion is inescapable that if an insurer cannot do it in the one case, he should not be allowed to do it in the other.

A false designation of a person as an employee who was not, in fact, such, is as much a fraud as a false designation of a person in good health who was not so in fact.

The policy here under consideration precludes a different interpretation. It provides:

"Entire Contract. This policy, with the application of the Employer and *the individual applications,* if any, of the Employees insured, copies of which are attached hereto, shall constitute the entire contract between the parties. All statements made by the Employer or *by the individual employees* shall, in the absence of fraud, be deemed representations and not warranties, *and no statement shall be used in defense of a claim under this policy unless it is contained in the written application.* Only the President, Vice-President, Secretary or Assistant Secretary has power on behalf of the Company to make or modify this contract of insurance." (Italics added.)

In effect, the written statements of both parties contained in the policy, the application of the employer and the individual applications of the employee, which by this very clause are declared to "constitute the entire contract between the parties", are the measure of the insurer's responsibility.

Clauses of this character work both ways. They aim to protect both sides against resort to outside evidence in order to assert rights not granted or specifically excluded. Grant that, in some respects and under some policies, the employer in delivering the certificate may not be, for all purposes, the agent of the insurer. Boseman v. Insurance Company, 1937, 301 U.S. 196, 57 S.Ct. 686, 81 L.Ed. 1027; Leach v. Metropolitan Life Insurance Company, 1927, 124 Kan. 584, 261 P. 603. Yet, when the policy nowhere defines what an employee is and the power to designate the employees is given, as it is in this policy, to the employer, the false designation of an employee, to whom a certificate is actually issued upon his application, involves, not a question of coverage, but a fraudulent representation, which is not the subject of inquiry after the death of the employee and when the rights of his beneficiary have accrued.

To allow the inquiry, in order to defeat the policy, would mean to allow a modification of its terms by evidence outside of it and a contest not called for by the incontestability clause, and after the limitation in that clause has run.

This interpretation accords with the ruling of the Court of Appeals of Georgia in Equitable Life Assur. Soc. v. Florence, 1933, 47 Ga.App. 711, 171 S.E. 317, to the effect that [page 320] "the incontestable clause estops the insurer from denying that the insured was an employee at the time of the issuance of the policy". The law of California would preclude this contest. See Dibble v. Reliance Life Insurance Company, 1915, 170 Cal. 199, 149 P. 171, Ann.Cas.1917E, 34; Mutual Life Insurance Company v. Margolis, 1936, 11 Cal.App.2d 382, 53 P.2d 1017; Coodley v. New York Life Insurance Company, 1937, 9 Cal.2d 269, 70 P.2d 602. So would the principle adopted by our own Circuit Court of Appeals. New York Life Insurance Co. v. Kaufman, 9 Cir., 1935, 78 F.2d 398.

Assuming that the matter is to be determined according to the law of Missouri, we find no decision in that state deciding it. We are, therefore, free to cut a path of our own. So doing, we must follow accepted canons of interpretation and take into consideration both our local common law, or that of other states, and the common law as declared by our own Circuit. See Burgess v. Seligman, 1883, 107 U.S. 20, 2 S.Ct. 10, 27 L.Ed. 359; Siler v. Louisville & Nashville R. R. Co., 1909, 213 U.S. 175, 29 S.Ct. 451, 53 L.Ed. 753; Railroad Comm. of California v. Los Angeles Ry. Corp., 1929, 280 U.S. 145, 50 S.Ct. 71, 74 L.Ed. 234; Burns Mortgage Co. v. Fried, 1934, 292 U.S. 487, 54 S.Ct. 813, 78 L.Ed. 1380, 92 A.L.R. 1193; see, also, Edward S. Stimson: Swift v. Tyson,—What Remains, 1938, 24 Cornell Law Quarterly, 54, 67–69. This, on the assumption that the courts of Missouri would do the same.

And if the conclusion reached accords with our sense of right and justice, we may overlook the fact that some courts of high standing, such as the Court of Appeals of New York, have interpreted incontestability clauses in a manner more favorable to insurance companies and have allowed contests for fraud after the expiration of the contestable period. See Steinberg v. New York Life Insurance Company, 1933, 263 N.Y. 45, 188 N.E. 152, 153, 90 A.L.R. 642; Manhattan Life Insurance Company v. Schwartz, 1937, 274 N.Y. 374, 9 N.E.2d 16; Ruhlin v. New York Life Insurance Company, 3 Cir., 1937, 93 F.2d 416. We feel that, as these contracts are written by the insurer, upon forms prepared by it, as they must be

894

interpreted strongly against it, and any doubt resolved in favor of the insured,—an interpretation which would allow an insurance company to avoid the effect of its policy after the death of the insured and after receipt, without murmur, of premiums, would not be in consonance with the liberal and enlightened views on the subject declared by the California decisions and those of our own Circuit and other federal courts.

Judgment for the plaintiff.

Judgment and findings to be presented by the plaintiff in accordance with Local Rule 8.