## COLLIER v. METROPOLITAN LIFE INS. CO.

### Civil Action No. 2577—48.

United States District Court
District of Columbia.

March 3, 1949.

Harvey L. Rabbitt of Washington, D. C. (Kermit F. Kip of New York City, of counsel), for plaintiff.

John M. Lynham, of Minor, Gatley & Drury, of Washington, D. C., for defendant.

TAMM, District Judge.

This is an action for money alleged to be due plaintiff under the terms of a group life insurance policy issued by defendant. By it, defendant insured the lives of employees of The Evening Star Newspaper Company, of whom plaintiff was one. Because of the fact that this is a case of first impression in this jurisdiction, it is felt necessary that the facts should be set forth in some detail.

During 1926, The Evening Star Newspaper Company, hereinafter called the employer, and the Metropolitan Life Insurance Company, hereinafter called the insurer, or the defendant, entered into negotiations which culminated in the execution, on December 17, 1926, of a group life insurance policy. According to its specific provisions, this policy provided, inter alia, as follows:

1. (a) The employer was to be primarily liable for the payment of all premiums (Para. 3, p. 2), though provision was made for proportionate participation therein by the employees; (b) either the employer or insurer could require a recomputation of the premiums due the insurer (Para. 3[d], p. 2); (c) there was granted to the employer the option of renewal of the insurance on any anniversary date, on due notice and under conditions not here relevant (Para. 4, p. 2); (d) the employer had the option of changing the premium payments from annually to semi-annually, etc. (Para. 4[b], p. 2); (e) provision was made for coverage of new employees, discontinuance of insurance on persons no longer in the employ of the newspaper company, together with increases or decreases in the amount of insurance, and the employer was charged with the responsibility of keeping the insurer currently apprized of these facts (Para. 6, 7 and 8, p. 2).

2. It further provided that "The Company will issue to the employer for delivery to each employee * * * an individual certificate setting forth a statement as to the insurance protection to which such employee is entitled, the beneficiary to whom payable .* * *" (Para. 10, p. 3).

3. Prior to his sixtieth birthday, if any employee became totally and permanently disabled, as the result of bodily injury or disease, the insurer agreed to make monthly payments "to the said Employee or to a person designated by him for the purpose; or, if such disability is due to, or is accompanied by, mental incapacity, to the beneficiary of record of the said Employee * * *" (Para. 13, p. 3) (Emphasis supplied). These disability payments were to be made for a specified period of months which varied with the salary or wage of the Employee and the amount of insurance coverage extended to him.

4. It was further provided that "The Policy as herein defined, the application of the Employer, a copy of which is attached hereto and made a part hereof, and the individual applications of the Employees, constitute the entire contract between the parties and, except for non-payment of premiums, shall be incontestable as to insurance in force at the date hereof after one year from the date of issue of this original contract * * *" (Para. 14, p. 3).

5. Unearned premiums (Para. 9, p. 2) as well as divisible surplus (Para. 15, p. 3) were to be paid by the insurer to the Employer.[1]

The application for this group insurance was signed at Washington, D. C., December 9, 1926, by the late Fleming Newbold, Business Manager of The Evening Star Newspaper Company.

Plaintiff, an employee of The Evening Star Newspaper Company, made application, in 1926, for insurance under the group policy naming his then wife as beneficiary,[2] and subsequently was issued a certificate which specifically stated that (a) *"Under and subject to the terms and conditions of"* the policy issued to the employer, the life of the employee would be insured; (b) *"The said Group Policy provides* Total and Permanent Disability Benefits as described on the last page hereof"; (c) "Should the Beneficiary die before the Employee named herein, the interest of such beneficiary shall vest in such Employee, *subject to the provisions of said Group Policy"*; and (d) *"Under the terms of the Group Policy* mentioned on Page one of this Certificate" in the event of total and permanent disability the insurer will make monthly benefit payments *"to such employee"* (Emphasis supplied). It should be noted here that the certificate issued to the employee made no mention of the person to whom payments would be made in the event the employee's permanent and total disability was due to or accompanied by mental incapacity.

Plaintiff alleges that on or about June 15, 1929, he was injured and later became totally and permanently disabled; that on March 14, 1930, he was adjudged of unsound mind and committed to St. Elizabeth's Hospital from which institution he was discharged on May 16, 1946, as cured. Thereafter his civil rights were restored by Order of this Court. Plaintiff further alleges that on or about January 1, 1931, proof of his total and permanent disability was presented to the insurer by his named beneficiary, his then wife, and that thereafter defendant erroneously and wrongfully paid to the said named beneficiary, sixty monthly instalments of $54 each, which payments were retained and used by said beneficiary for her own benefit, plaintiff receiving no part thereof. The sixty monthly payments represented in duration and amount the payments which the insurer was obligated to make by the specific provisions of the policy under the total and permanent disability provisions thereof. Following plaintiff's discharge from St. Elizabeth's Hospital, he made demand upon defendant for payment of these benefits and on refusal thereof this suit was instituted on June 22, 1948 for judgment in the amount of $3,240.00 plus interest and costs. The plaintiff contends that the defendant was bound by the insurance contract to make these payments to him under the statement contained in his certificate "to such Employee"—while the defendant answers that its payment to plaintiff's designated beneficiary under the terms of the contract between itself and the Employer constituted a full and complete discharge of its obligation.

The matter is now before the Court on plaintiff's motion for Summary Judgment and defendant's motion to dismiss.

The District of Columbia Code, § 35—711, provides that no policy of group life insurance shall be issued in the District unless it contains a provision that the policy, the application of the employer, and the individual applications of the employees insured, shall constitute the entire contract between the parties. It is to be noted, however, that this provision of the Code was enacted in 1934, 48 Stat. 1165, ch. 672, § 11,

---

[1] Paragraph and page number references are to the Group Policy.

[2] Mr. and Mrs. Collier were divorced in 1936 and she has since remarried.

and having no retroactive effect, would not be controlling here where the contract was entered into in 1926.

As stated in paragraph 4, supra, the group policy itself provides that the policy, the application of the employer and the applications of the employees shall constitute the entire contract between the parties. Plaintiff contends, however, that since the policy also provides for the issuance of Certificates to the employees, these certificates constitute a part of the contract of insurance. Defendant contends that the provisions of the group policy govern and plaintiff concedes that if this is so then the payments made by defendant to the beneficiary were proper and the complaint must fail.

The question presented is whether the plaintiff's rights and the defendant's liability would have been the same if the policy had not provided for the issuance of the certificate. The certificate specifically provided that it was issued *"under and subject to the terms and conditions"* of the group policy and in other instances enumerated hereinbefore indicated that the provisions of the group policy would control. Unlike the certificate in the Dorman case[3] on which plaintiff relies, there are no provisions in the present certificate which do not appear in the master policy. In fact, the real basis of the present action, is that there was a provision in the master policy which did not appear in the certificate. The distinction between the present case and the Dorman case is illustrated by the following statement of the Court in the Dorman case [108 F.2d 222]:

"In the case at bar not only would many of the insured's rights and insurer's liabilities not be the same if the certificate had not been issued, but, without the certificate, the amount of his insurance and his obligation to pay a premium to keep it effective would not have been a part of the written agreement which created the liability of the insurer. A certificate required to be issued by the master policy to determine the terms and conditions of the insurer's liability is a part of the policy."

In the instant case, under the terms of the group policy (Para. 2, p. 2), the employer was required to keep a register, in card index form, showing the names of all employees insured, and amount of insurance on each such employee. This register was supplied to the employer by the insurer and was kept current by the insurer to reflect changes in the employees covered as well as the amount of insurance coverage on each such employee since the policy (Para. 8, p. 2) likewise provided for automatic increases in said insurance coverage under certain conditions. While the certificate on its face showed the original amount of insurance issued to the employee, it would hardly be contended that if the employee had died or had become totally and permanently disabled between the time his insurance had been increased by reason of a salary increase and his receipt of the rider agreed to be furnished him, or between the time the contract of insurance was entered into and the date plaintiff received his certificate, that the insurer's liability would have been limited to the face amount of the certificate, in the first instance, or that no liability at all attached, in the second instance.

Counsel for plaintiff lay great stress on the fact that the certificate contained the following admonition to the employee:

"This certificate is valuable to you, and you should keep it in a safe place, known to you and your benficiary."

In the opinion of the Court this provision is of no moment in a determination of the question here presented. The certificate might well be likened to a stock certificate, bank book, Government bond, etc, which are indicia of ownership but not conclusive of the debtor's liability to the holder.

The defendant contends that since plaintiff has recovered from the disability for which benefits were paid, he is not entitled to maintain this action, but stated in the hearing on the motions under consideration that the defendant had no intention now of seeking to recover the amounts paid to plaintiff's designated beneficiary. Plaintiff contends, however, that having recognized

---

[3] Dorman v. John Hancock Mutual Life Ins. Co., D.C., 25 F.Supp. 889, affirmed 9 Cir., 108 F.2d 220.

the disability of the plaintiff, even though it paid the benefits to one whom plaintiff contends was the wrong party, nevertheless, the defendant having conceded disability, is now estopped from denying it. This argument of plaintiff might be worthy of further consideration if the provisions of the certificate were controlling or if the certificate were a part of the contract, but as will be hereinafter shown, such is not the case. The Court's opinion as set out hereafter negatives the necessity for consideration of the plaintiff's present capacity to sue under the total and permanent disability provisions of the insurance policy.

Counsel for plaintiff have brought to the attention of the Court that recently Certificates issued by the insurer under this group policy have been changed to now show that in the event of total and permanent disability accompanied by insanity, the payments would be made as provided in said group policy. Counsel argue that the recognition by the defendant of its mistake in the certificate issued to the plaintiff is most significant for if the certificate is of no importance then the need for a change was non existent. To hold that such a change was an admission of error, hence liability, would be equivalent to holding that because the world gets wiser as it gets older, therefore it was foolish before. People do not furnish evidence against themselves simply by adopting a new plan in order to prevent the recurrence of an event that, as here, resulted in litigation. A rule which so operates as to deter men from profiting by experience and availing themselves of new information has nothing to commend it, for it is neither expedient nor just.

By reasons of the provisions heretofore set forth that the policy and the applications shall constitute the entire contract, there appears to be no support for plaintiff's contention that the certificate issued to him constitutes a part of the contract under which his rights are to be determined. While the facts in the instant case are not identical with those before the United States Supreme Court in the case of Boseman v. Connecticut General Life Insurance Company, 301 U.S. 196, 57 S.Ct. 686, 690, 81 L.Ed. 1036, 110 A.L.R. 732, nevertheless this Court feels that the holding in that case is applicable to the current case and dispositive of the matter now before it. In the Boseman case, supra, the Court said:

"But the certificate is not a part of the contract of, or necessary to, the insurance. It is not included among the documents declared 'to constitute the entire contract of insurance.' Petitioner was insured on the taking effect of the policy long before the issue of the certificate. It did not affect any of the terms of the policy. * * * It served merely as evidence of the insurance of the employee. Petitioner's rights and respondent's liability would have been the same if the policy had not provided for issue of the certificate."

Since the Certificate issued to plaintiff did not form any part of the contract of insurance, the fact that it did not contain the provision with respect to the payment of benefits in the event of total and permanent disability coupled with mental incapacity, which are set forth in the insurance contract between the insurer and the employer, does not result in any ambiguity between different parts of the same contract, it is, therefore, unnecessary to enter into any discussion of this phase of insurance or contract law.

There is nothing in the application of the employer or of the employee which affects in any way the issue raised in the present pleadings.

Plaintiff's motion for Summary Judgment will be denied and the defendant's motion to dismiss will be granted. Counsel will present, on proper notice, proposed findings of fact and conclusions of law.