## KAFFANGES v. NEW YORK LIFE INS. CO.

### No. 2686.

Circuit Court of Appeals, First Circuit.

June 27, 1932.

F. S. Deitrick and G. L. Dillaway, both of Boston, Mass., for appellant.

F. H. Nash, Stuart C. Rand, and Richard Wait, all of Boston, Mass., for appellee.

Before BINGHAM, WILSON, and MORTON, Circuit Judges.

WILSON, Circuit Judge.

This is an appeal from a decree of the District Court of Massachusetts in an equity proceeding seeking to declare null and void that part of a life insurance policy which also provided for disability benefits. The policy was issued in August, 1926, and contained an incontestable clause as to death benefits, but not as to the disability provisions.

In his application for the policy on August 26, 1926, the appellant stated that he had never consulted a physician or suffered any ailment or disease of the brain or nervous system; that he had been successfully operated on for hernia on left side in 1912, and on right side in 1918. So far as the representations in his application were concerned, the applicant was in perfect health, and had never been ill except for the two operations for hernia.

It developed, however, after the policy was issued, that the appellant had been afflicted with epilepsy resulting from an injury to his head by a fall when a child. The facts are undisputed that in 1912 he was a patient in the Massachusetts General Hospital for treatment for epilepsy, and again in 1915. In 1918 he obtained exemption from the draft on this ground. There was also evidence as to periodic attacks down to the time of his application.

Two main issues were involved: (1) Were the statements contained in the application false and made to deceive, or, if false, did they materially increase the risk? (2) Was their falsity waived by the appellee with knowledge of the appellant's condition by the acceptance of the premiums on the policy in August, 1929, and August, 1930?

The sitting justice in the District Court found that the policy was obtained by fraud, and there was no waiver on the part of the insurance company.

The opinion was evidently rendered orally at the close of the hearing, and is somewhat sketchy, as when one is reasoning offhand without previous deliberation. However, the conclusion of the court on the two essential issues, viz. that the policy was obtained by fraud and that there was no waiver, are stated without qualifications.

By his assignment of errors the appellant claims that the finding of fraud is not sustained by the evidence; that the evidence clearly shows a waiver of any fraud in obtaining the policy; that much of the evidence on which the findings of the District Judge were based was clearly inadmissible, and to this admission exceptions by the appellant were duly made and allowed.

[1] The record does disclose some irregularities in procedure, even in equity, and it is not entirely easy in sifting the admissible from the inadmissible evidence to separate the wheat from the chaff. In some instances the District Judge indicated he would not consider certain evidence objected to on the issue of fraud. The record and his opinion, however, do not show that in arriving at his conclusion of fraud he considered any of the inadmissible testimony. The presumption is that he did not, as there was admissible evidence, if believed by him, sufficient to warrant his finding of fraud.

▬▬ An inspector for another insurance company testified that the appellant in 1930 made a claim against the company which the witness represented, and in investigating the appellant's condition the witness stated that he talked with the appellant as to his previous condition, and the appellant admitted to him that he had been subject to recurrent epileptic fits since 1912, and that they had occurred about every six months ever since his admission to the hospital in 1912. The appellee also presented a witness, Roukas, who evidently was expected to testify that he had known the appellant since 1922, and that some time in April, 1923, the appellant had told him that he had had two epileptic fits since the latter part of 1922.

Although the plaintiff offered this witness, who on the stand denied making such statements, or that he ever knew of the appellant being ill, the plaintiff was permitted, presumably on the ground of surprise, to put on the person to whom it was claimed the statements were made, who testified that on three occasions, when interviewed by him, the last time just before the trial, the witness Roukas had stated that the appellant in 1923 had explained some burns on his hands as being due to his falling in an epileptic fit while mixing candy, and also that the appellant, within a period of approximately six months in the latter part of 1922 and early part of 1923, had had two attacks of epilepsy.

The appellant offered considerable negative testimony as to his freedom from such attacks from 1919 to 1929, mostly by people of his own nationality, and also expert testi-

mony to the effect that, if he had no such attack from 1915 to 1926, they would consider him cured. No explanation of its recurrence in 1929 was given by the experts except that something must have occurred to bring on the trouble again. No evidence was offered by the appellant of any occurrence sufficient to cause such recurrence after more than ten years of freedom.

The District Court heard the witnesses. There were circumstances connected with much of the evidence that renders the opinion of the sitting justice as to its credence and weight of great value. He expressly found that the witness Roukas was not telling the truth on the stand, and also that the appellant's testimony was not to be believed.

If the District Judge believed the testimony of Hughes and of O'Rourke as to statements made to him by witness Roukas before the trial, in view of the history of epileptic attacks from 1912 to 1918, and his claim of exemption from the draft on this ground, and the recurrence of attacks to the extent, as he now claims, of totally disabling him in 1929–1930, we cannot say the District Judge was clearly wrong in finding that the appellant's epileptic condition was concealed from the company at the time of making his application for the purpose of deceiving the company as to his true physical condition. The answers to the questions in his application were as to material facts, and the facts such as the insurance company was in good faith entitled to know.

As to whether there was a waiver by accepting premiums under the policy on August 18, 1929, and August 18, 1930, it appears that the first intimation that the appellant had ever been subject to epileptic fits was through an anonymous letter received August 9, 1929. It gave the source where such information could be obtained. An interview with the appellant by an investigator for the appellee by the name of Price at first resulted in a denial, but finally an admission of attacks in 1912 and 1915. He tried to account for his being excused from the draft by explaining that it was a cousin who was so afflicted. An inquiry of various friends and acquaintances produced no results, except that a woman by the name of Sigolos told Price that the appellant had recurrent attacks at her home up to 1925, and had been treated by a Dr. Driscoll; but Dr. Driscoll denied that he ever treated him for epilepsy, but had heard rumors of his taking a cure for such trouble four years before and since then had been free of such attacks. There were

suspicious circumstances connected with the statements by the Sigolos woman and the testimony of her husband in the case, though for some reason the District Judge did not permit the woman to testify and disregarded her statements to Price, except as they bore on the issue of waiver.

Prior to Price completing his investigations and reporting to the appellee in September, 1929, the premium due August 18, 1929, had been paid; but, as bearing on the effect of the payment in August, 1930, the closing paragraph of Price's report to the appellee is significant:

"My investigation does not indicate that the insured had an epileptic attack for the past four years, nor that he was sick when he was examined in August, 1926. In appearance he seems to be of average good health, and the only physical impairment is flat feet that cause him to shuffle when he walks.

"Except for the pneumonia and blood poisoning this past winter, he has been in average good health and nothing appears that would tend to hasten his death before the term of his policy. He has had no recent known epileptic seizures, and from what Dr. Driscoll says, has not had any seizures during the past four or five years."

When claim was made in 1930 for disability by reason of epilepsy, other reports were made to the insurance company by other investigators bearing on his then condition as to disability, and not on fraud in his application. It does not appear that any further information was obtained as to his past history in this particular, and the premium due on August 18, 1930, was accepted without further knowledge of his past history than that obtained by Price in August and September, 1929.

In September, 1930, the applicant was notified that his claim of disability was rejected, not because of fraud in obtaining the policy, but on the ground that he was not totally disabled as claimed. Suit was brought by the appellant to recover under his policy, and then the investigator O'Rourke was sent out to obtain more information as to his past record as bearing on a defense on the ground of fraud. It was this investigator who learned for the first time from Roukas, after the receipt of the 1930 premium in August, that the appellant had admitted to him (Roukas) of having attacks in 1922–1923, and also from a hospital record in the Cambridge Hospital, that the appellant admit-

ted, while a patient there, that he had an attack as late as 1919, and that the appellant had admitted to witness Hughes that in 1930 his attacks of epileptic fits had been continuous and had occurred approximately one every six months since 1912.

The knowledge obtained by Price in 1929 in the light of the statements of Dr. Driscoll would not have warranted the company in then repudiating the disability provisions of the policy. We do not think, therefore, it can be said that the company had sufficient knowledge of the medical history of this appellant prior to August 18, 1930, to warrant this court in holding that the District Court erred in ruling that there was no waiver by the appellee of any fraud in the procuring of the policy, or that the finding of the District Court of the absence of such knowledge as to constitute waiver was clearly wrong.

The decree of the District Court is affirmed, with costs.