## NESS v. MUTUAL LIFE INS. CO. OF NEW YORK.

### No. 3579.

Circuit Court of Appeals, Fourth Circuit.
April 3, 1934.

Joseph A. Patla and J. M. Horner, Jr., both of Asheville, N. C., for appellant.

J. Bat Smathers, of Asheville, N. C. (Frederick L. Allen, of New York City, and Johnson, Smathers & Rollins and T. A. Uzzell, Jr., all of Asheville, N. C., on the brief), for appellee.

Before PARKER and SOPER, Circuit Judges, and WILLIAM C. COLEMAN, District Judge.

PARKER, Circuit Judge.

This is an appeal in a suit instituted to cancel the disability and double indemnity provisions of two policies of life and disability insurance and to recover the moneys paid by the company as disability benefits together with the premiums waived on account of disability. The court below found that both policies were obtained by means of false and fraudulent representations made by the insured and granted the relief prayed. The insured has appealed, contending that the company is precluded by the incontestability clause of the policies from relying on the fraud alleged. We think that this point is conclusive of the case.

The incontestability clause in question, which is the same in both policies, except that only one policy provides for double indemnity and consequently only one incontestability clause refers to this feature of the policy, is as follows:

"Incontestability.—Except for non-payment of premiums and except for the restrictions and provisions applying to the Double Indemnity and Disability Benefits as provided in Sections 1 and 3 respectively, this Policy shall be incontestable after one year from its date of issue unless the Insured dies in such year, in which event it shall be incontestable after two years from its date of issue."

The company contends that the effect of the second exception of this clause is to make it inapplicable to the double indemnity and disability provisions of the policy. The contention of the insured, which we think is correct, is that the effect of this exception is merely to preserve the rights of the company under the restrictions and provisions specifically set forth in sections 1 and 3.

It is to be observed that the promise of the company to pay double indemnity and disability benefits is in the face of the policy and that sections 1 and 3 contain the provisions, limitations, and conditions under which these double indemnity and disability benefits will be paid. The promise in the face of the policy is that the company will pay to the beneficiary $10,000 upon due proof of the death of the insured "or twenty thousand dollars, upon receipt of due proof that such death resulted from bodily injury effected solely through external, violent, and accidental means, and occurred within ninety days after such injury, all upon the conditions set forth in Section 1, and if the insured is totally and presumably permanently disabled before age 60, will pay to the insured one hundred dollars monthly during such disability, besides waiving premium payments, all upon the conditions set forth in Section 3." The section 1 referred to is as follows:

"Section 1. Double Indemnity. The double indemnity will be payable upon receipt of due proof that the insured died as a direct result of bodily injury effected solely through external, violent, and accidental means, independently and exclusively of all other causes, and of which, except in the case of drowning or asphyxiation, there is evidence by a visible contusion or wound on the exterior of the body, and that such death occurred within ninety days after the date of such injury; provided that the double indemnity shall not be payable if death resulted from self-destruction, whether sane or insane, or from military or naval service in time of war, or from any act incident to war, or from engaging in riot or insurrection, or from committing an assault or felony, or from participation in aeronautics, or directly or indirectly from disease or bodily or mental infirmity.

"The Company shall have the right and opportunity to examine the body and to make an autopsy unless prohibited by law.

"If requested in writing by the insured, the Company will terminate the provision for double indemnity by endorsement on this Policy. If so terminated, the premiums payable thereafter shall be reduced by the premium for such benefit."

The section 3, relating to disability benefits, begins by defining total and permanent disability. This is followed by a provision that the disability benefits and waiver of premiums shall be granted, if the insured, before attaining the age of sixty and while no premium is in default, shall furnish the company due proof of disability. Then follows a number of general provisions relating to disability benefits, including provisions, that, if upon request of the company the insured should fail to furnish proof of the continuance of disability, no further income payments would be made or premiums waived, that disability benefits would not be granted if the disability should be the result of self-inflicted injury, and that the provision for disability benefits should automatically terminate if the insured should engage in military or naval service outside the continental limits of the United States and Canada.

The purpose of the second exception in the incontestability clause was to make clear that, notwithstanding the provisions of that clause, the company reserved the right to rely upon the restrictions and provisions contained in sections 1 and 3. Thus the right was reserved to contest, under section 1, liability for double indemnity in case of suicide or death resulting from military or naval service or from engaging in felony. And the right was reserved to contest, under section 3, claims for disability where due proofs had not been furnished, or where upon request of the company proofs of the continuance of the disability had been refused, or where the disability resulted from self-inflicted injury or from military or naval service beyond the continental limits of the United States and Canada. Under some recent decisions defenses under clauses such as those contained in sections 1 and 3 are held not to be precluded by the incontestability clause. See Scales v. Jefferson Standard Life Ins. Co., 155 Tenn. 412, 295 S. W. 58, 55 A. L. R. 537, and note, and Wright v. Philadelphia Life Ins. Co. (D. C.) 25 F.(2d) 514, and cases there cited. But in many jurisdictions it is held that the incontestability clause does preclude a defense based upon such provisions. See notes in 55 A. L. R. 549 and 67 A. L. R. 1364. It was evidently to guard against a construction of the policy holding that the defenses reserved in sections 1 and 3 were precluded by the in-

contestability clause, that the second exception in that clause was inserted.

■■■ If it had been the intention of the company that the right to contest liability for double indemnity or disability benefits should not be affected by the incontestability clause, it would have been easy enough to use language making that intention clear, as by simply wording the second exception to the incontestability clause to read: "Except as to liability for double indemnity or disability benefits." If there were any ambiguity in the language used, it is well settled that it should be resolved in favor of the insured. Mutual Life Ins. Co. v. Hurni Packing Co., 263 U. S. 167, 174, 44 S. Ct. 90, 68 L. Ed. 235, 31 A. L. R. 102; Imperial Fire Ins. Co. v. Coos County, 151 U. S. 452, 462, 14 S. Ct. 379, 38 L. Ed. 231; Thompson v. Phenix Ins. Co., 136 U. S. 287, 297, 10 S. Ct. 1019, 34 L. Ed. 408. But there is no ambiguity. The incontestability clause was directed at defenses which might be asserted to the policy. The exception which we are considering was clearly intended to except certain defenses from the operation of that clause; and, equally clearly, the defenses so excepted were those enumerated in the sections to which specific reference was made, i. e., sections 1 and 3. These sections provide the restrictions and provisions under which the promise with respect to double indemnity and disability made in the face of the policy are to be enjoyed. And the second exception in the incontestability clause preserves defenses arising out of these restrictions and provisions against the general effect of the clause. It is to be noted that the exception is, not as to the double indemnity and disability benefits, but as to "restrictions and provisions applying to the double indemnity and disability benefits."

We have carefully considered the cases relied on by the company, Kaffanges v. New York Life Ins. Co. (C. C. A. 1st) 59 F.(2d) 475; New York Life Ins. Co. v. Bullock (D. C.) 59 F.(2d) 747; Penn Mutual Life Ins. Co. v. Hartle, 165 Md. 120, 166 A. 614, 615; Greber v. Equitable Life Assurance Society (Ariz.) 28 P.(2d) 817; and Mutual Life Ins. Co. v. McConnell, an unreported decision of the Court of Common Pleas of Mercer county, Pa. In the Kaffanges Case no such point as is here involved seems to have been considered by the Circuit Court of Appeals. The court stated that the policy contained an incontestability clause as to death benefits, but not as to disability provisions, and proceeded to consider questions relating to fraudulent representation and waiver. In the Bullock Case no mention of the incontestability clause was made in the opinion, and there is nothing to show that it was considered by the court. In the Hartle Case the opinion of the court states that "the disability and double indemnity features of the insurance were, by the supplemental agreement, excluded from the effect of the incontestability provision"; and the question before the court for decision was whether waiver of premiums was to be considered a disability benefit. In the Greber Case it was apparently not disputed that the language, which is very different from that here involved, excepted from the incontestability clause the double indemnity and disability features of the policy; and the question in the case was whether this was in violation of the state statute relating to incontestability of life policies. The McConnell Case seems to be in point; but in that case the considerations which we think controlling here seem not to have been suggested to the court, as they are not dealt with in the opinion.

For the reasons stated, we are of opinion that there was error in the decision of the learned judge below. The decree will accordingly be reversed and the cause will be remanded for further proceedings not inconsistent with this opinion.

Reversed.