### EQUITABLE LIFE ASSUR. SOC. OF UNITED STATES v. DEEM.
### No. 4185.

Circuit Court of Appeals, Fourth Circuit.

Aug. 6, 1937.

570

Robert G. Kelly, of Charleston, W. Va. (Brown, Jackson & Knight, of Charleston, W. Va., on the brief), for appellant.

S. A. Powell, of Harrisville, W. Va., for appellee.

Before PARKER and NORTHCOTT, Circuit Judges, and CHESNUT, District Judge.

CHESNUT, District Judge.

The proper interpretation of an excepting phrase in the incontestable clause of a life insurance policy is the matter for decision in this case. In addition to the promise of the insurer to pay $10,000.00 to the insured's beneficiary on his death, the policy, issued April 9, 1929, contained *provisions* for the payment of double indemnity in the event of the death of the insured from accident, and also for the payment of benefits of $100.00 a month to the insured in the case of his total and permanent disability, and for the waiver of subsequent premiums in that event, "subject to the *conditions* of such provision." On February 21, 1936, the insured filed suit against the insurer in the district court to recover disability benefits accruing from January 1, 1932. The insurer defended on the ground of certain specified false and fraudulent representations alleged to have been made by the insured in his application for the policy. The plaintiff's demurrer to this defense was sustained by the district court and at the trial of the case evidence in support of the defense offered by the defendant was rejected by the court, with the result that the plaintiff obtained a judgment for disability benefits

under the policy in the sum of $5,962.50, from which the defendant has prosecuted this appeal.

The district court rejected the insurer's defense on the view that it was precluded by the incontestable clause of the policy which read as follows:

"This policy, *except as to the provisions relating to Disability and Double Indemnity,* shall be (a) *Incontestable* after it has been in force during the lifetime of the Insured for a period of one year from its date of issue, provided premiums have been duly paid, and (b) free from restrictions on travel, residence, occupation, or military or naval service." (Italics supplied.)

The italicized phrase is the subject matter for interpretation in this case. The contention of the insurer is that the phrase clearly excepts from the operation of the incontestable clause that portion of the whole policy relating to disability and double indemnity; while that advanced on behalf of the insured is that the phrase should be construed to read "except as to the *conditions* of the provisions relating to disability and double indemnity," and when so read it is said the clause does not permit a contest, after one year from the date of the policy, of the liability of the insurer to pay disability benefits, if they are otherwise payable on the conditions specified in the policy; or, in other words, the only permissible contests are limited to a determination whether the conditions have been met.

 There is no uncertainty as to the rule of construction which must here govern. The subject matter is one of general law to which the federal courts are authorized to apply their own rules of decision, and indeed must do so in this case, there being no pertinent statute or decision in West Virginia, in which State the insured resided and the case was tried. It does not clearly appear from the record in what State the contract was made. The policy was executed and the proceeds made payable in New York but it is perhaps inferable that it was delivered and became effective in West Virginia as the application for the policy was dated at Parkersburg. Mutual

Life Ins. Co. v. Johnson, 293 U.S. 335, 55 S.Ct. 154, 79 L.Ed. 398; Northwestern Mut. Life Ins. Co. v. Johnson, 254 U.S. 96, 41 S.Ct. 47, 65 L.Ed. 155.[1] The well established federal rule as to the construction of insurance policies generally, applicable as well to the incontestable clause of life policies, is that where the language and meaning is clear and unambiguous it is to be understood in its plain, ordinary and popular sense; but in case of ambiguity, that construction is to be adopted which is most favorable to the insured. Imperial Fire Ins. Co. v. Coos County, 151 U.S. 452, 463, 14 S.Ct. 379, 38 L.Ed. 231; Mutual Life Ins. Co. v. Hurni Packing Co., 263 U.S. 167, 174, 44 S.Ct. 90, 68 L.Ed. 235, 31 A.L.R. 102; American Life Ins. Co. v. Stewart, 300 U.S. 203, 215, 57 S.Ct. 377, 81 L.Ed. 605; Strochmann v. Mutual Life Ins. Co., 300 U.S. 435, 57 S.Ct. 607, 81 L.Ed. 732.

It will be an aid to the interpretation to bear in mind the origin and development of the incontestable clause. Life insurance policies, in common with other contracts, were subject to attack for fraud or material misrepresentation in their procurement. From the nature of the subject matter such an attack usually came only after the death of the insured who was ordinarily the chief witness to defend the integrity of the policy. As the volume and importance of life insurance increased, and its economic function as a long term investment and credit aid, as well as its primary purpose of security for dependents, became more widely understood, the need was felt for some assurance against such possible attacks on the validity of the policy. In consequence, many companies began thirty or more years ago to insert the incontestable clause in their policies, and today the inclusion of the clause is very general, and is now required by the statutes of many States.[2] In the earlier cases applying the clause, there was some diversity of opinion as to its operation and in some cases an apparent failure to clearly distinguish between "a denial of coverage and a defense of invalidity." "It means only this, that within the limits of the coverage the policy shall stand, unaffected by any defense that it was invalid

---

[1] Morris v. Insurance Co., 114 W.Va. 278, 171 S.E. 740, and Young v. Insurance Co., 114 W.Va. 716, 173 S.E. 566, deal with the incontestable clause, but not with the point here involved.

[2] See 11 North Carolina Law Review, p. 93, where as of 1932 there are listed 25 States having such a statute. See also Cooley's Briefs on Insurance, vol. 5, p. 4508; Couch Cyc. Ins. Law, vol. 8, § 2155a.

in its inception, or thereafter became invalid by reason of a condition broken." Metropolitan Life Ins. Co. v. Conway, 252 N.Y. 449, 452, 169 N.E. 642, 643 (per Cardozo, C. J.) For illustration, where the policy clearly excluded liability for death by suicide, some decisions held that the insurer was nevertheless liable by reason of the incontestable clause. But now, by the federal decisions without any noted exception, and in many State courts, the clause does not bar a contest over claims for loss not within the coverage of the policy.[3]

■ It is now generally held that, subject to the limits of coverage and clearly excluded risks, and with particular exceptions not here material, such as necessity of proof of claim and possible defense based on public policy, the clause bars all contests not excepted by its terms. In consequence it is now customary to insert specified exceptions in the clause. In its earliest form the clause generally excepted only the required payment of the premium. But, due in part to the uncertainty as to the operation of the clause in conflict with excluded risks, and to meet new conditions arising in the business of life insurance, other exceptions have been added from time to time, and in some states the statutes have specifically authorized them. Thus in New York the earliest form of the clause as required by statute contained as the only exception the nonpayment of premiums (Insurance Law [Laws 1892, c. 690] § 101 as added by Laws 1906, c. 326, § 37). In 1909 the statute was amended to add the exception of "violation of the conditions of the policy relating to military or naval service in time of war" (Insurance Law § 101, subd. 2, Laws 1909, c. 301, § 7); and in 1921 (Laws 1921, c. 407, § 1) there was further added the exception that the policy must have been in force during the lifetime of the insured for (one or) two years; and finally in 1923 (Laws 1923, c. 28, § 1, section 101,

subd. 2, Insurance Law) the statute was again amended to allow, at the option of the insurer, exception from the clause of "*provisions relative* to benefits in the event of total and permanent disability and *provisions which grant* additional insurance specifically against death by accident." (Consol.Laws, c. 28). This latter statute and its particular wording is obviously of significance here as the defendant insurer is a corporation of the State of New York and directly subject to its laws, to which its policies must conform. (Italics supplied.)

■ As indicated by this history of the New York statute, the exception as to disability and double indemnity benefits is of comparatively recent origin. When the incontestable clause was first adopted, it was not customary for life policies to include provisions for accident and health insurance, and it was therefore not until that added form of protection became fairly general, for an additional premium, that the necessity for the exception arose. It may also be noted, as a matter of common knowledge, that in assuming these extra risks, the life insurance companies came into competition with the companies writing accident and health insurance, whose policies were generally written for a yearly period only and did not contain the incontestable clause. But whatever the reason for the now customary exception, "No reason appears to doubt the power of the insurer to except from the ordinary Incontestability Clause *all policy provisions relating to Disability Benefits.* Chapter 28, Laws N.Y. 1923 (Insurance Law [Consol.Laws, c. 28], § 101); Steinberg v. New York Life Ins. Co., 263 N.Y. 45, 188 N.E. 152, 90 A.L.R. 542." Stroehmann v. Mutual Life Insurance Co., 300 U.S. 435, 439, 57 S.Ct. 607, 609, 81 L.Ed. 732. (Italics supplied). And in interpreting the excepting phrase, the only question is whether the wording used discloses a purpose definitely so to do.

---

[3] Flannagan v. Prov. Life & Accident Ins. Co. (C.C.A. 4) 22 F.(2d) 136, 140; Sanders v. Jefferson Stan. Life Ins. Co. (C.C.A. 5) 10 F.(2d) 143; Mack v. Conn. Gen. Life Ins. Co. (C.C.A. 8) 12 F.(2d) 416; Hurt v. New York Life Ins. Co., 51 F.(2d) 936 (C.C.A. 10); Hearin v. Standard Life Ins. Co. (D.C.Ark.) 8 F.(2d) 202; Wright v. Phila. Life Ins. Co. (D.C.S.C.) 25 F.(2d) 514; New York Life Ins. Co. v. Gatti (C.C.A. 3) Oct. 6, 1936 (rehearing granted). See, also, Richards on Insurance (4th Ed.) § 380;

82 Univ. Penn. Law Review (June 1934) 839, 845; 55 A.L.R. 549; 67 A.L.R. 1364. Northwestern Mut. Life Ins. Co. v. Johnson, 254 U.S. 96, 41 S.Ct. 47, 65 L.Ed. 155, is not to the contrary, because the liability for death by suicide at the time it occurred, was not expressly excluded by the policy and the Company's defense based on suicide was therefore an effort to defeat the operation of the incontestable clause on the ground of a condition, (based on public policy) broken.

■ In our opinion it does. This is the effect of the words used in their plain meaning. There is no ambiguity or uncertainty in the phrase. The wording is naturally that which comes to mind to express the thought intended. It is, in abbreviated form, in the very words used in the statute, and as expressed in the Supreme Court opinion, supra. The exception, "as to the provisions relating to Disability and Double Indemnity" is comprehensive in scope, applying to all such provisions in the policy. Smith v. Equitable Life Assur. Soc., 169 Tenn. 477, 89 S.W.(2d) 165. And the exception directly relates to the "policy," that is it excepts the part of the policy which *grants* the disability benefits as an obligation of the company. The phrase does not grammatically modify the word "incontestable" and thus merely affect the causes of contest, but relates to the whole subject matter of the policy insofar as it covers liability of the company for disability benefits. The policy as a whole includes three separate kinds of insurance, which constitute in reality three major promises of insurance protection, life, accident and disability. It seems entirely clear that the insurer intended to avail itself of the statutory authority to make the incontestable clause inapplicable to the latter two of these risks, and thus excepted from the clause those provisions of the policy relating to them.

■■ Nor is there any reason to think the insured could have understood the matter differently. The contention of its counsel is that the word "provisions" should be read to mean "conditions." But in the context here appearing that would be a definite change not only in the word but in the thought. In the purely lexicographical sense, there may be in some contexts an overlapping in meaning of these two words; but as applied to the subject matter of a contract it is clear that the word "provisions" has the more general, and the word "conditions" the more particular meaning. Thus the "provisions" of the policy relating to disability benefits, include the particular "conditions" on which they become payable; but the provisions which affirmatively *create* the liability of the company are not the conditions which limit and restrict that liability. Possibly more importantly, from the viewpoint of what the insured should have understood the language to mean, the first page of the policy, which states the fundamental features of the contract, itself distinguishes the meaning of the two words in the sentence—"And further, if the Insured before age 60 becomes totally and presumably permanently disabled as defined in the Total and Permanent Disability *provision* on the third page hereof, the Society will, subject to the *conditions* of such *provision*, waive subsequent premiums and pay to the insured a Disability income of one hundred dollars a month." And after stating the amount of the annual premium to be paid by the insured, the policy continued to say—"These payments include an annual premium of $10.00 for the Double Indemnity and $25.10 for the Total and Permanent Disability *provision* hereof." (Italics supplied.)

Counsel for the insured cites a number of prior decisions of this and other courts in claimed support of his contention. But with one exception, Kiriakides v. Equitable Life Assur. Soc., 174 S.C. 140, 177 S.E. 40, they all dealt with differently worded exceptions as to disability in the incontestable clause. The Kiriakides Case was based largely on the Ness Case (Ness v. Mutual Life Ins. Co. of N.Y., 70 F.(2d) 59) in this court where the wording was quite different. On the other hand, while we have noted no federal decision interpreting a clause with the same wording used in this case, the courts of Tennessee and Arizona have construed the very same excepted phrase in the policy of the defendant here in accord with the conclusion above reached, and the New York Appellate Division has reached the same conclusion on practically the same wording in the policy of another company. Smith v. Equitable Life Assur. Soc., 169 Tenn. 477, 89 S.W.(2d) 165 (the latest case with a full review of prior decisions); Greber v. Equitable Life Assur. Soc., 43 Ariz. 1, 28 P.(2d) 817; Guardian Life Ins. Co. v. Katz, 243 App.Div. 11, 14, 275 N.Y.S. 743.

Chief reliance for the insured is placed upon the case of Ness v. Mutual Life Ins. Co. of N. Y., 70 F.(2d) 59, in which this court held the excepting phrase as there worded was not effective to render the incontestable clause inapplicable to disability benefits. The wording of the exception was however quite different from that in the instant case. The phrase there used read: "Except for non-payment of premiums and except for the *restrictions* and *provisions applying* to the Double Indemnity and Dis-

ability Benefits as *provided in Sections 1 and 3 respectively,* this Policy shall be incontestable." (Italics supplied.) On comparison the differences are obvious. In the Ness Case the word "provisions" by the context was at least susceptible of a meaning synonymous with "restrictions" or "conditions"; the exception was grammatically applicable to the word incontestable (rather than to the "policy"), and the scope of the phrase was further limited specifically to certain portions of the policy, and not made applicable to the whole. And Judge Parker, for the Court, clearly points out the distinction in the opinion. "It is to be noted that the exception is, not as to the double indemnity and disability benefits, but as to 'restrictions and provisions applying to the double indemnity and disability benefits.'" And again:

"If it had been the intention of the company that the right to contest liability for double indemnity or disability benefits should not be affected by the incontestability clause, it would have been easy enough to use language making that intention clear, as by simply wording the second exception to the incontestability clause to read: 'Except as to liability for double indemnity or disability benefits.'"

And again, referring to the case of Greber v. Equitable Life Assur. Soc., supra, he pointed out that the language there used was very different from that used in the Ness case.

Following the Ness Case and reaching similar conclusions on the identical wording, are the cases of Mutual Life Ins. Co. v. Markowitz, 78 F.(2d) 396 (C.C.A. 9) and Mutual Life Ins. Co. v. Margolis, 11 Cal.App.(2d) 382, 53 P.(2d) 1017. In the Third Circuit a contrary conclusion was reached in Mutual Life Ins. Co. v. Stroehmann, 86 F.(2d) 47, but the Supreme Court on certiorari reversed and resolved the conflict in favor of the holding in the former cases by adopting the view that the exception so worded was ineffective to exempt the provisions as to disability benefits because the phrase as worded was ambiguous. 300 U.S. 435, 57 S.Ct. 607, 81 L.Ed. 732.

Counsel also refer to the cases of New York Life Ins. Co. v. Truesdale, 79 F.(2d) 481, and New York Life Ins. Co. v. Yerys, 80 F.(2d) 264, decided by this Court on a still differently worded exception, which read "incontestable * * * except for non-payment of premium and except as to provisions and conditions relating to disability and double indemnity benefits." The *rule of the Ness Case was followed without further discussion,* as it was thought the two phrases were not materially different. The same conclusion was reached on the same wording in the Ninth Circuit in New York Life Ins. Co. v. Kaufman, 78 F.(2d) 398, and Horwitz v. New York Life Ins. Co., 80 F.(2d) 295, and also in Thompson v. New York Life Ins. Co., 9 F.Supp. 248, 250 (D.C.Okl.); while the contrary was held in the Fifth Circuit in Pyramid Life Ins. Co. v. Selkirk, 80 F.(2d) 553, and in the Third Circuit in New York Life Ins. Co. v. Gatti (supra, note 3) and also in a number of State Courts.[4]

In the Stroehmann Case (300 U.S. 435, at page 440, 57 S.Ct. 607; 609, 81 L.Ed. 732) the Supreme Court not only resolved the conflict in federal judicial opinion as to the effect of the excepting phrase in the policy of the Mutual Life Insurance Company of New York, but also referred to the wording of the New York Life policy as "different language," and added "Certain life companies undertake to make exceptions to the incontestability clause by words more precise than those now under consideration, and opinions in cases arising upon their policies must be appraised accordingly." The wording of the policy of the Equitable Life in the present case is clearly more precise than those just above mentioned.[5]

---

[4] Steinberg v. New York Life Ins. Co., 263 N.Y. 45, 47, 188 N.E. 152, 90 A.L.R. 542 (cited in the Stroehmann Case in the Supreme Court, supra); Millis v. Cont. Life Ins. Co., 162 Wash. 555, 298 P. 739; New York Life Ins. Co. v. Gresham, 170 Miss. 211, 154 So. 547. See, also, Penn Mut. Life Ins. Co. v. Joseph (D.C.Minn.) 5 F.Supp. 1003; Kaffanges v. New York Life Ins. Co., 59 F.(2d) 475 (C.C.A. 1); Penn Mutual Life Ins. Co. v. Hartle, 165 Md. 120, 166 A. 614, 91 A.L.R. 1466.

[5] It is at least of interest to note that, while the opinion in the Stroehmann Case does not mention the wording of the Equitable Life policy (as used in this case) it was brought to the attention of the court in the brief for the respondent, pp. 14, 17, and the case of Smith v. Equitable Life Assur. Soc., 169 Tenn. 477, 89 S.W.(2d) 165, supra, was emphasized.

As the wording of the policy in this case is plain and unambiguous, it must be given its natural meaning, and it should not be affected by such diversity of opinion as has arisen over other clauses which have employed different language of less precise import. While ambiguities which fairly exist in insurance policies must be resolved in favor of the insured, it is not permissible for courts by a strained and over-refined construction of ordinary words to create an ambiguity which would not otherwise exist. Whitney v. Union Central Life Ins. Co., 47 F.(2d) 861, 864 (C.C.A. 8). And while the incontestable clause is a valuable feature of life insurance and is to be liberally construed to effectuate its beneficent purpose, there is no reason to deny to the insurer the option given by statute to except from its operation the additional features of disability and double indemnity benefits, where its purpose to do so has been definitely expressed. "To make a contract incontestable after the lapse of a brief time is to confer upon its holder extraordinary privileges. We must be on our guard against turning them into weapons of oppression." American Life Ins. Co. v. Stewart, 300 U. S. 203, 215, 57 S.Ct. 377, 380, 81 L.Ed. 605.

As the case must be sent back to the District Court for trial on its merits, one other point should be briefly noticed. Counsel for the insurer contends that the policy never took effect because in his application the insured agreed in writing that it should not "until the first premium has been paid during my good health" (which became part of the policy contract), and that the insured was in fact not in good health when the policy was issued and the premium was paid. And this defense is urged as a separate proposition, even if the incontestable clause does not except the disability benefits from its operation, on the theory that neither the whole policy nor any part thereof ever became operative, and therefore the incontestable clause is ineffective. It is sufficient to say that the latter contention is unsound, as the incontestable clause bars a defense of this nature, when not specifically excepted. Mutual Reserve Fund Life Ass'n v. Austin, 142 F. 398, 6 L.R.A.(N.S.) 1064 (C.C.A. 1); Hurt v. New York Life Ins. Co., 51 F.(2d) 936 (C.C.A. 10); Couch Cyc Ins.Law, Vol. 8, § 2155b. But as the clause in this case is inapplicable to the disability benefits the defense based on the statement in the application will be open for consideration at the trial on the merits unaffected by the incontestable clause. The policy, with respect to the separate feature of life and disability insurance is clearly severable, as the amount of the premium for disability benefits is specifically apportioned thereto, and the structure of the policy is not inconsistent with severability; and the cases uniformly so hold under such conditions. New York Life Ins. Co. v. Truesdale, 79 F.(2d) 481, 486 (C.C.A. 4); Pyramid Life Ins. Co v. Selkirk, 80 F.(2d) 553 (C.C.A. 5); Kaffanges v. New York Life Ins. Co., 59 F. (2d) 475 (C.C.A. 1); New York Life Ins. Co. v. Davis (D.C.) 5 F.Supp. 316, 319; Penn Mutual Life Ins. Co. v. Hartle, 165 Md. 120, 166 A. 614, 91 A.L.R. 1466; Greber v. Equitable Life Assur. Soc., 43 Ariz. 1, 28 P.(2d) 817; 91 A.L.R. 1470, note; Downey v. German Alliance Ins. Co., 252 F. 701, 703 (C.C.A. 4).

Reversed.