Russell O. POLLOCK, Plaintiff,

v.

ATLANTIC GREYHOUND CORPORATION, a Corporation, Defendant.

Civ. A. Nos. 306–307.

United States District Court
N. D. West Virginia,
Fairmont Division.

Oct. 13, 1954.

Eugene T. Hague and Orville L. Hardman, Parkersburg, W. Va., for plaintiff.

Steptoe & Johnson and W. F. Wunschel, Charleston, W. Va., and Robert B. McDougal, Parkersburg, W. Va., for defendant.

WATKINS, Chief Judge.

In these two actions, which were consolidated and tried before the court in lieu of a jury, plaintiff seeks to recover benefits, past and future, under Section 27 of defendant's Employees' Retirement Annuity Plan. In Action 307–F plaintiff claims the sum of $7,500, being the aggregate of benefits allegedly due him at the rate of $125 per month from September 1, 1946 to December 5, 1951. In Action No. 306–F plaintiff seeks an order requiring defendant to pay him $86.12 each month from December 5, 1951 so long as he lives. Plaintiff, having already been paid the sum of $38.88 per month since January 8, 1949 under Sections 25 and 26 of the Plan, and being entitled to receive this monthly payment for the remainder of his life, defendant denies that plaintiff is entitled to any benefits whatever under Section 27 of the Plan. Both actions were started in the Circuit Court of Wood County, and removed to this court. In both actions the question is whether the plaintiff is entitled to benefits under Section 27 of the Plan.

There is no dispute as to the material facts. The material facts have been stipulated or stand uncontradicted on the record. The court makes the following findings of fact and conclusions of law:

Plaintiff, a resident of Parkersburg, W. Va., was employed by defendant as a bus driver on November 1, 1929. Effective July 1, 1941, defendant corporation offered to qualified employees a company initialed "Employees Retirement Annuity Plan". Qualified on the basis of past service as a bus driver, plaintiff made contributions by the process of payroll deductions in return for coverage under the Plan. Section 27 says, in part, as follows:

"If you are totally and permanently disabled from engaging in any occupation for wages or profit in line of duty, i. e., as the result of an accident occurring, or an occupational disease contracted, in the course of your employment, regardless of age or length of service * * * and if you take your future service annuity your employer will undertake to assure you a certain specified income for life."

On September 1, 1946, while driving in the course of his employment, plaintiff was engaged in a traffic collision and suffered injuries to the extent that his employment with defendant was ultimately terminated January 8, 1949 because of his physical disqualification for further employment as a bus driver. Plaintiff has stipulated that he "is not claiming that he is totally and permanently disabled from engaging in any occupation for wages or profit."

While asserting no claim of being totally and permanently disabled from engaging in any occupation for wages or profit other than that of bus driving, plaintiff takes the position that Section 27 of the Plan applies to instances where a company employee is totally and permanently disabled from engaging in his particularly chosen field of endeavor, without regard to the employee's ability to pursue other gainful occupations. Plaintiff contends that Section 27 says and was intended to mean that an employee, regardless of his age or length of service, who is totally and permanently disabled from engaging in *his particular job with defendant* is entitled to receive lifetime income provided under Section 27. His position is rendered more extreme by the further assertion that such an employee may be disabled from engaging in his particular job with defendant, but may perform other duties for defendant or others, for which he receives wages and, nevertheless, be eligible to receive the lifetime income under Section 27. Defendant contends that total and permanent disability from engaging in *any* occupation for wages or profit as the result of an accident occurring, or an occupational disease contracted, in the course of employment is prerequisite for coverage under Section 27.

The crux of the issue for decision emanates from the first clause of Section 27. That clause reads:

"If you are totally and permanently disabled from engaging in any occupation for wages or profit in line of duty, i. e., as the result of an accident occurring, or an occupational disease contracted, in the course of your employment, * * *"

Plaintiff contends that the words "in line of, i. e., as the result of an accident occurring or an occupational disease contracted, in the course of your employment" modify and restrict the words "occupation for wages or profit". Defendant contends that these words modify and restrict the word "disabled", and with this contention I thoroughly agree. The words "in line of duty" by reason of the *id est* clause immediately following, are defined "as the result of an accident occurring or an occupational disease contracted in the course of your employment". To make any sense whatever, the last quoted clause must necessarily refer to the word "disabled", and it follows that the words "in line of duty" likewise must refer to the word "disabled" and not to the words "occupation for wages or profit".

Sections 25 and 26 of the Plan are very helpful in ascertaining the intended function of Section 27 and the meaning attributed thereto by the parties. Section 25 states:

"Upon termination of services by reason of physical disqualification for your job with Greyhound Lines (not constituting total and permanent disability, as defined in Section 27 hereof, and not constituting cause of discharge), * * *".

Section 25 then proceeds to set forth certain benefits that employees would be entitled to should their services be terminated because of physical disqualification *for their job*. Under Section 26 the Company also has undertaken to pay a mathematically determined benefit between the date of an employee's physical disqualification for his job and his normal retirement date. Upon attaining this retirement date Section 25 benefits then accrue to the injured employee.

■ It is clear that Section 27 when read in conjunction with Sections 25 and 26 applies only to employees who are totally and permanently disabled from engaging in *any* occupation for wages or profit as the result of an accident occurring or an occupational disease contracted in the course of their employment, and does not further cover employees who are only disqualified for their particular job with defendant. Sections 25 and 26 pertain to this latter contingency and expressly exclude from coverage employees suffering total and permanent disabilities. If plaintiff's position were to be upheld, the final result would be to find the defendant corporation sponsoring a Plan providing dual relief for partially disabled employees and no relief whatever for totally and permanently disabled employees. It is clear that the present Plan was not intended to effect such a result.

The above Plan is equally clear if the language of Section 27 alone is considered. The words "any occupation for wages or profit" certainly must have been inserted for a deliberate purpose, i. e., to define the type or extent of disability necessary to qualify for benefits under Section 27. Otherwise the phrase would have read like the one in Section 25, which states, in part:

"Upon termination of service by reason of physical disqualification for your job with Greyhound Lines * * *."

The plaintiff was merely disabled from driving a motor bus, and does not contend that he is disabled from engaging in other occupations. He is therefore covered under Sections 25 and 26, and has been paid and is now being paid all that he is entitled to receive under these sections. He is not now entitled to receive any benefits under Section 27.

■ Both parties say that the language of Sections 25, 26 and 27 is without ambiguity. I concur. I do not find these sections even fairly susceptible of

two interpretations. Only by giving the disputed provisions a curious, hidden and unwarranted meaning could this court subscribe to plaintiff's position. In this regard it is to be noted that courts may not create ambiguity which would not otherwise exist by a strained and over refined construction of ordinary words. Equitable Life Assurance Society v. Deem, 4 Cir., 91 F.2d 569. Upon a finding that the language of a contract is clear and unambiguous a court will not substitute some other agreement for the one that is clearly expressed. See Shanks v. Wilson, D.C.W.Va., 86 F.Supp. 789, and cases there cited.

Judgment will be entered for the defendant in each action.